UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| In Re:<br><br>TIMOTHY L. BRADSHAW,<br><br>Debtor. | CASE NO: 06-11111<br><br>Chapter 7 |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

NOW COME Petitioners Douglas R. Ivester, Jr. and Barbara C. Ivester (collectively, the "Petitioners" or "Mr. and Mrs. Ivester"), by and through counsel, and file this Motion for Relief from Automatic Stay pursuant to Section 362(d) of the United States Bankruptcy Code. In support of this motion, Petitioners respectfully show this Court the following:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334, as a proceeding involving the administration of the Debtor's estate and a motion for relief from the automatic stay provision of 11 U.S.C. § 362(a).

2. Mr. and Mrs. Ivester are citizens and residents of Mocksville, Davie County, North Carolina.

3. The Debtor, Timothy L. Bradshaw ("Debtor" or "Mr. Bradshaw"), is an individual who marketed himself as a financial advisor and "Certified Estate Adviser." Mr. Bradshaw is also president, sole member, and manager of Alternative Financial Concepts, L.L.C. ("AFC").

US2000 9611096.1 55762-311516

4. Mr. Bradshaw served as financial advisor to Mr. and Mrs. Ivester from 2003-04. During this time, based on the recommendation and representations of Mr. Bradshaw, the Ivesters placed almost $1 million under his management, which Mr. Bradshaw, in turn, invested in a scheme he marketed as the Capital Appreciation Program (the "CAP program").

5. As represented by Mr. Bradshaw, the CAP program consisted of the alleged purchase from Mobile Billboards of America, Inc. ("MBA") of mobile billboards capable of being mounted on trucks. These billboards would then be leased to Outdoor Media Industries ("OMI"). Investors could purchase a billboard frame for one side of the truck for $10,500, and billboard frames for two sides of a truck for $20,000. The investment principal for this sale and leaseback scheme was represented to be "100 percent guaranteed" through Reserve Guaranty Trust ("Reserve Guaranty"), and the investment supposedly returned a profit in the form of monthly lease payments from OMI.

6. Despite Mr. Bradshaw's representations to the Ivesters, the CAP program in fact was part of an illegal Ponzi scheme. The investors' money was not used for the purchase and leasing of billboards. Instead, investors such as the Ivesters received a "return" on their investment from either the principal of their own investment or through investments made by subsequent investors.

7. The CAP program also constituted the "offer" and "sale" of securities as defined in N.C. Gen. Stat. §§ 78A-2(8) and 78A-2(11). However, the securities were not registered with the Securities Division of the Department of the Secretary of State prior to or at the time they were offered or sold to persons in North Carolina, including to the

Ivesters, and were not otherwise exempt from registration. In addition, Mr. Bradshaw was not registered in North Carolina as a dealer or salesman of securities, as required by N.C. Gen. Stat. § 78A-36(a).

8. On April 2, 2004, the Secretary of State of the State of North Carolina, Elaine F. Marshall, entered a cease and desist order (File No. 03-017-TG) ordering MBA, Mr. Bradshaw, AFC, and others to stop the offer and sale of the CAP program. The order was personally served on Mr. Bradshaw on April 6, 2004, by John Curry, the chief investigator for the State of North Carolina, Department of the Secretary of State.

9. Even though Mr. Bradshaw was personally served with the cease and desist order on April 6, 2004, he did not disclose the order to Mr. and Mrs. Ivester. In fact, Mr. Bradshaw sold the Ivesters $570,000 of the nearly $1 million they invested in the CAP program *after* being served with the cease and desist order.

10. In September 2004, Mr. Bradshaw advised the Ivesters that the Securities and Exchange Commission ("SEC") and state regulatory agencies had raised questions regarding whether the CAP program should have been marketed as a security, and informed the Ivesters that MBA and OMI had ceased operations indefinitely and would not be making any further lease payments.

11. On September 21, 2004, the SEC filed a complaint for injunctive and other relief in the United States District Court for the Northern District of Georgia against MBA, OMI, and others. A receiver was appointed for the collection of MBA's and OMI's assets.

12. After investing nearly $1 million in the CAP program, the total return received by Mr. and Mrs. Ivester from their monthly payments from OMI amounted to a mere $55,219.57. Mr. and Mrs. Ivester lost virtually all of their retirement savings as a result of the fraudulent and illegal mobile billboard investment scheme.

13. Within three months after the North Carolina Secretary of State initiated its administrative action against Mr. Bradshaw and AFC and issued its cease and desist order, and after the SEC began investigating the mobile billboard investment scheme, Mr. Bradshaw and his wife, Fredia Bradshaw, purchased a house located at 2606 Woods End Lane, Greensboro, North Carolina, 27410, for a sales price of $520,000 and a tax value in excess of $435,000. The Debtor titled the property as tenancy by the entirety. Out of the $520,000 sale price of the property, $124,910.44 was paid with a check drawn on the bank account of AFC.

14. Beginning in September 2003, Mr. Bradshaw began transferring substantial sums of money from AFC's bank account to various other bank accounts controlled by Mr. Bradshaw, his wife, or other entities controlled by Mr. Bradshaw. No consideration was given for these transfers and they were made for the sole purpose of protecting assets from creditors. The transfers include the following:

    a. More than $90,000 transferred by Mr. Bradshaw from AFC's bank account to the bank account of the Lyndsey Foundation, a special purpose trust organized by Mr. Bradshaw and his wife, who are the sole donors, creators, and trustees of the trust.

b. $100,000 transferred by Mr. Bradshaw on March 22, 2004, from AFC's bank account to a brokerage account at Interactive Brokers in Mr. Bradshaw's individual name. On January 21, 2005, the $100,000 was transferred from this brokerage account to an account at American Partners Federal Credit Union in the sole name of Fredia Bradshaw.

c. $134,500 transferred by Mr. Bradshaw from AFC's bank account to PublishTown, L.L.C. ("PublishTown"), a limited liability company of which Mr. Bradshaw is the registered agent and sole member and manager.

d. $425,000 transferred by Mr. Bradshaw from AFC's bank account to a joint bank account in the name of Tim Bradshaw and Fredia Bradshaw. Of this amount, $190,000 was transferred in September 2004, following Mr. Bradshaw's receipt of formal notice from MBA that the SEC had initiated an inquiry into the mobile billboard investment scheme.

15. On February 10, 2005, Mr. and Mrs. Ivester filed suit against Mr. Bradshaw, AFC, and Fredia Bradshaw, among others, in the Superior Court of Davie County, North Carolina. On March 11, 2005, the Ivesters filed an Amended Complaint, adding Lyndsey Foundation and PublishTown as defendants.[1] A true and accurate copy of the Amended Complaint is attached hereto as Exhibit A.

---

[1] Numerous other defendants named in the complaints, including MBA, OMI, Reserve Guaranty, and MBA's attorneys and accountants have since been dismissed from the lawsuit.

5

16. The Amended Complaint sets forth causes of action against the defendants for, *inter alia*, violation of the North Carolina securities laws, fraud, and fraudulent transfers.

17. On February 11, 2005, an order of attachment was issued and levied upon, thereby attaching all of the personal property of Tim Bradshaw, Fredia Bradshaw, and AFC, including the joint bank account of Tim and Fredia Bradshaw. A true and accurate copy of the order of attachment is attached hereto as Exhibit B. The order of attachment was served on these parties on February 12, 2005. The order of attachment also attached all real property of Tim Bradshaw, Fredia Bradshaw, and AFC. The Guilford County Sheriff levied against the Woods End Lane property and a certificate of levy was entered on the lis pendens docket on October 21, 2005. A true and accurate copy of the certificate of levy is attached hereto as Exhibit C.

18. On March 11, 2005, an order of attachment was issued and levied upon, thereby attaching the property of Lyndsey Foundation and PublishTown. A true and accurate copy of the order of attachment is attached hereto as Exhibit D.

19. The attachments obtained by Mr. and Mrs. Ivester were perfected more than 90 days prior to the Debtor's bankruptcy filing, establish the Ivesters' priority to the property attached, and cannot be avoided by the Trustee under 11 U.S.C. § 544 or 11 U.S.C. § 547. *See In re Suggs*, __ B.R. __, __, No. 05-51313, 2006 WL 2965790, at **2-3 (Bankr. M.D.N.C. Oct. 16, 2006); *In re Medlin*, 229 B.R. 353, 358 & n.2 (Bankr. E.D.N.C. 1998); *see also Edwards v. Brown's Cabinets*, 63 N.C. App. 524, 528, 305 S.E.2d 765, 768 (1983). Thus, the attachments will continue to encumber the property

notwithstanding any recovery of such property by the Trustee pursuant to 11 U.S.C. § 548.

20. On December 1, 2005, the Ivesters moved for partial summary judgment against Mr. Bradshaw and AFC as to their First Claim for Relief, the defendants' offering and sale of unregistered securities. After hearing argument, the Honorable Thomas W. Seay, Jr. granted the Ivesters' motion and entered an order on Janaury 5, 2006, holding Mr. Bradshaw and AFC jointly and severally liable to the Ivesters for $915,280.43, plus interest, costs, and attorneys' fees, for their offering and sale to the Ivesters of unregistered securities. A true and accurate copy of Judge Seay's order is attached hereto as Exhibit E.

21. Trial on the Ivesters' remaining claims against Mr. Bradshaw, AFC, Fredia Bradshaw, Lyndsey Foundation, and PublishTown was originally scheduled for the October 2, 2006 session of the Superior Court of Davie County.

22. On September 25, 2006, Mr. Bradshaw filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code.

23. Although the automatic stay provision of 11 U.S.C. § 362(a) applied only to Mr. Bradshaw, and not the remaining defendants, the Ivesters were concerned that, due to the nature of their fraudulent transfer claims and the orchestration by Mr. Bradshaw of the underlying acts giving rise to the liability of the other defendants, there might be reasonable disagreement as to the effect of Mr. Bradshaw's bankruptcy filing as to their claims against the remaining defendants. Thus, the Ivesters elected to postpone the trial

to the next available trial session pending further clarification of the status of these claims.

24. Trial on the Ivesters' remaining claims is now set for the February 5, 2007 session of the Superior Court of Davie County.

25. Section 362(d) of the Bankruptcy Code provides that a party in interest may request that the Court grant relief from the automatic stay for cause. This provision effectuates Congress' recognition that "'it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.'" *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836).

26. The Ivesters' state-court action involves the North Carolina securities laws, an area of state law over which North Carolina state courts have particular expertise. The remaining issues of fraud and fraudulent transfers also arise under state law and do not require the expertise of the bankruptcy court.

27. The state court action has proceeded for nearly two years before the Superior Court of Davie County. Extensive discovery has been conducted, depositions taken, and the Ivesters have already obtained partial summary judgment as to their first claim for relief. Indeed, Mr. Bradshaw filed his bankruptcy petition just a week before trial on the remaining issues was to commence. Trial is now scheduled for the February 5, 2007 session of the Superior Court of Davie County. Thus, these issues can be more

expeditiously resolved in state court and relief from the automatic stay would promote judicial efficiency.

28. Mr. Bradshaw's debts to the Ivesters are non-dischargeable under 11 U.S.C. § 523(a)(19) and, as such, are not subject to the provisions of 11 U.S.C. § 523(c). Thus, the state court has concurrent jurisdiction to determine the dischargeability of Mr. Bradshaw's debts, *see In re Zimmerman*, 341 B.R. 77 (Bankr. N.D. Ga. 2006); *Long v. Long*, 102 N.C. App. 18, 23-24, 401 S.E.2d 401, 403-04 (1991), and relief from the automatic stay in order to allow the state court action to proceed will not interfere with the bankruptcy case.

29. Because Mr. Bradshaw is a defendant in the state-court proceeding, a final judgment in that proceeding will result in a complete resolution of Mr. Bradshaw's interests in the property at issue. Moreover, the attachments obtained by the Ivesters establish their priority to the attached property, even if the Trustee were to avoid the transfers under 11 U.S.C. § 548.

30. In sum, the hardships that will be incurred by Mr. and Mrs. Ivester if relief from the automatic stay is denied outweighs any potential prejudice to the Debtor's estate. Good cause therefore exists to grant relief from the automatic stay under 11 U.S.C. § 362(d). *See In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *In re Hogan*, No. 04-12336C-7G, 2004 WL 3510112, at *2 (Bankr. M.D.N.C. Oct. 18, 2004); *In re Claughton*, 140 B.R. 861, 867-68 (Bankr. W.D.N.C. 1992).

WHEREFORE, Petitioners Mr. and Mrs. Ivester respectfully request that this Court:

9
Case 06-11111    Doc 13    Filed 12/14/06    Page 9 of 12

1. Grant the Petitioners relief from the automatic stay provisions of 11 U.S.C. § 362(a) and allow them to continue to pursue to conclusion and liquidate in state court the claims asserted against Mr. Bradshaw in the state court action;

2. Grant the Petitioners relief from the automatic stay provisions of 11 U.S.C. § 362(a) in order to allow them to obtain from the state court a determination, pursuant to 11 U.S.C. § 523(a)(19), of the dischargeability of (a) any judgments previously or hereafter obtained against Mr. Bradshaw in the state court action, and (b) any obligations undertaken by Mr. Bradshaw pursuant to any settlement of the claims asserted in the state court action hereafter entered into by Mr. Bradshaw;

3. Grant the Petitioners relief from the automatic stay provisions of 11 U.S.C. § 362(a) and allow them to continue their prosecution in state court of the fraudulent transfer claims asserted in the state court action with respect to all property (and the transferees thereof) against which the Petitioners have obtained attachments or other liens pursuant to state law prior to the bankruptcy filing, which are superior to the rights of the Trustee, including without limitation the Woods End Lane property purportedly held by Mr. Bradshaw and his wife as tenants by the entirety, and to apply any recoveries with respect to such properties to Mr. Bradshaw's debts to the Petitioners; and

4. For such other and further relief as this Court may deem just and proper.

This the 14th day of December, 2006.

/s/ James J. Hefferan, Jr.
David C. Smith (State Bar #12558)
E-mail: DCSmith@KilpatrickStockton.com

Tonya R. Deem (State Bar #23075)
E-mail:  TDeem@KilpatrickStockton.com
James J. Hefferan, Jr. (State Bar #31579)
E-mail:  JHefferan@KilpatrickStockton.com

*Attorneys for Petitioners, Douglas R. Ivester, Jr. and Barbara C. Ivester*

KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

## CERTIFICATE OF SERVICE

This is to certify that on this date the undersigned, attorney for Petitioners, in accordance with LBR 9007-1, served the foregoing **MOTION FOR RELIEF FROM AUTOMATIC STAY** by depositing a copy thereof in the United States mail, postage prepaid and addressed as follows:

| | |
|---|---|
| Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC  27410<br><br>*Debtor* | Gerald S. Schafer, Esq.<br>220 Commerce Place<br>Greensboro, NC  27401<br><br>*Attorney for Debtor* |
| Michael D. West<br>Bankruptcy Administrator<br>P.O. Box 1828<br>Greensboro, NC  27402 | William P. Miller, Esq.<br>Roberson Haworth & Reese, PLLC<br>300 N. Main Street, Ste. 300<br>P.O. Box 1550<br>High Point, NC  27261<br><br>*United States Trustee* |
| Alternative Financial Concepts, L.L.C. by serving its registered agent, Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 | Fredia Nixon Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 |
| Lyndsey Foundation<br>by serving ts registered agent, Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC  27410 | PublishTown, L.L.C.<br>by serving its registered agent, Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC  27410 |

This the 14th day of December 2006.

/s/ James J. Hefferan, Jr.
James J. Hefferan, Jr.
*Attorney for Petitioners*

KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  (336) 607-7300