IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY L. BRADSHAW, | ) | Case No. 06-11111 |
| | ) | |
| Debtor | ) | Chapter 7 |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on January 11, 2007 upon a Motion for Relief from

Stay (the "Motion for Relief"), filed by Barbara and Doug Ivester (the "Ivesters") on December

14, 2006.  William P. Miller appeared in his capacity as Chapter 7 trustee (the "Trustee"),  James

J. Hefferan, Jr. appeared on behalf of the Ivesters, and Gerald Schafer appeared on behalf of the

above-referenced debtor (the "Debtor").

The Motion for Relief requested relief from the automatic stay afforded by Section 362(a)

of the Bankruptcy Code to (1) allow the Ivesters to pursue an ongoing action, Case No. 05-CVS-

228 (the "State Court Action") in the Superior Court of Davie County, North Carolina (the "State

Court") and liquidate certain state law claims against the Debtor, (2) allow the State Court to

determine the dischargeability of certain debts to the Ivesters pursuant to Section 523(a)(19) of

the Bankruptcy Code, and (3) allow the Ivesters to prosecute, as part of the State Court Action, a

claim for fraudulent transfer of all of the property that has been attached by the Ivesters in the

State Court Action.

The Ivesters argue that the attachments ordered by the State Court were perfected more

than ninety (90) days prior to the Debtor's bankruptcy filing and that the attachments establish

the Ivestors' superior interest in the attached property over the Trustee.  The Ivesters also argue

that a final judgment in the State Court Action will result in a complete resolution of the Debtor's

interest in the property at issue and that the attachments necessitate the superior priority of the

Ivesters.  Furthermore, the Ivesters aver that good cause exists to grant relief from the automatic

stay and that the bankruptcy estate would not be prejudiced if the Ivesters were permitted to

proceed with the State Court Action.

On January 11, 2007, the Court held a hearing on the Motion for Relief.  On January 17,

2007, the Ivesters filed a Motion for Leave to File Post-Hearing Brief and attached a proposed

post-hearing brief.  On January 18, 2007, the Court entered an Order that granting the Ivesters's

motion and affording any other party in interest the opportunity to file a post-hearing brief until

January 31, 2007.  On January 31, 2007, the Trustee also filed a post-hearing brief.

Based upon a review of the Motion for Relief, the briefs submitted, the arguments of

counsel, and the entire official file, this Court finds that there is insufficient cause to grant the

Motion for Relief and allow the Ivesters to proceed with the prosecution of the State Court

Action.

### I. FACTS

Beginning in March of 2004, the Debtor served as a financial advisor to the Ivesters, who

placed almost $1,000,000 under his management.  The Debtor purportedly invested this money in

a program he called the Capital Appreciation Program ("CAP").  At that time, the Debtor also

served as President of Alternative Financial Concepts, L.L.C. ("AFC"), a North Carolina limited

liability company.  The Ivesters allege that CAP was part of an illegal Ponzi scheme operated by

the Debtor.  The total return to the Ivesters from March of 2004 to the present is $55,219.57.

The Ivesters allege that, beginning in September of 2003, the Debtor began transferring substantial sums of money from AFC's bank accounts to various other bank accounts controlled by the Debtor, his wife, Freda Bradshaw ("Mrs. Bradshaw"), and other entities controlled by the Debtor. On March 11, 2005, the Ivesters filed the State Court Action against the Debtor, AFC, and Mrs. Bradshaw.[1] On March 11, 2005, the Ivesters amended their State Court Action by adding two additional defendants, PublishTown, L.L.C. ("PublishTown"), a North Carolina limited liability company, and the Lyndsey Foundation, a North Carolina special purpose trust, which are entities controlled by the Debtor and/or Mrs. Bradshaw.

On February 11, 2005, the State Court issued an Order of Attachment on all personal property and real property of the Debtor, Mrs. Bradshaw, and AFC. On March 11, 2005, the State Court issued an Order of Attachment on property of the Lyndsey Foundation and PublishTown. The Guilford County Sheriff levied against the Bradshaws' real property at 2606 Woods End Lane, Greensboro, North Carolina, 27410. On October 21, 2005, a certificate of levy was entered on the lis pendens docket in Guilford County. On December 1, 2005, the State Court granted partial summary judgment for the Ivestors against the Debtor and AFC, holding them jointly and severally liable to the Ivesters for $915,280,43 plus interest, costs and attorneys' fees for their violation of various securities laws.

On September 25, 2006, the Debtor filed his Chapter 7 bankruptcy petition. The State Court Action was scheduled for trial on October 2, 2006, on the remaining claims against the

---

[1] The complaint in the State Court Action states causes of action pursuant to North Carolina law for the offering and sale of unregistered securities, securities fraud, manipulation of the market, general fraud, negligence, breach of fiduciary duty, civil conspiracy, fraudulent conveyance, unfair and deceptive trade practices, and piercing the corporate veil.

Debtor, AFC, Mrs. Bradshaw, the Lyndsey Foundation, and PublishTown.  The Ivesters elected to postpone the trial to February 5, 2007.  On December 14, 2006, the Ivseters filed the Motion for Relief.  On January 5, 2007, the Trustee filed an objection to the Motion for Relief and removed the State Court Action to the United States District Court for the Middle District of North Carolina pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure.

On January 10, 2007, the Trustee filed an adversary proceeding, No. 07-2003  (the "Adversary Proceeding") against AFC, Mrs. Bradshaw, the Lyndsey Foundation, PublishTown, and Morris & Schneider, Trustee (the "Defendants").  Among other things, the Trustee requests that the Court find that the Defendants (with the exception of Morris & Schneider) are alter egos of the Debtor, that certain transfers of property to certain Defendants be set aside pursuant to Section 544 of the Bankruptcy Code, and that the Court impose a constructive trust upon certain funds wrongfully received by some of the Defendants.

On January 11, 2007, the hearing on the Motion for Relief Motion was held.  At the hearing, counsel for the Ivesters presented specific information concerning certain bank accounts and real property subject to the Orders of Attachment of the State Court.[2]

---

[2]The approximate balances are as follows: A joint bank account of the Debtor and Mrs. Bradshaw at BB&T has a balance of $4,612.00.  AFC's bank account at BB&T has a balance of $616.57.  Mrs. Bradshaw's bank account at American Partners Federal Credit Union has a balance of $55,971.00.  PublishTown's bank account at BB&T has a balance of $13,894.00. The Lindsey Foundation's bank account at Wachovia has a balance of $7,199.00.  As reflected in Schedule D of the Debtor's petition, the real property of the Debtor and Mrs. Bradshaw at 2606 Woods End Lane, Greensboro, North Carolina, 27410 is held as tenants by the entirety and is encumbered by a lien in favor of Washington Mutual Bank, F.A. to secure an obligation of $400,000.00.

## II. DISCUSSION

A. Relief From Stay for Cause

When a debtor files a bankruptcy petition, it does not, "in and of itself, erase a plaintiff's claim, its opportunity to litigate, or the fact that the debtor may be liable to the plaintiff in some amount." In re Wiley, 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003)(citing In re Bock Laundry Mach. Co., 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984)).  Relief from the automatic stay may be granted "for cause" pursuant to Section 362(d)(1) of the Bankruptcy Code.  "Cause" is not specifically defined, but "a desire to permit an action to proceed to completion in another tribunal may provide . . . cause."  H.R. Rep. No. 95-595, at 343-33 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963.  "Cause" may also include "the lack of any connection with or inference with the pending bankruptcy case."  S. Rep. No. 95-989, at 52 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787.

Congress has recognized that "'it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.'"  In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992) (quoting S. Rep. No. 95-989 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5836).  The court should balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if the moving party is forced to litigate the claim in bankruptcy court.  Wiley, 288 B.R. at 822.

As discussed below, the Investers have not shown cause for this Court to grant relief from the automatic stay for them to pursue the State Court Action.  To allow the Ivesters to go forward

would prejudice the bankruptcy estate, and other unsecured creditors would be denied a recovery. On the other hand, allowing the Trustee to go forward with the prosecution of the Adversary Proceeding would inure to the benefit of the Ivesters as well as all other creditors. At this time, the Ivestors have the largest unsecured claim in the case, possibly constituting eighty percent or more of all unsecured claims. Any successful outcome of the Adversary Proceeding would benefit the Ivesters by saving them the cost of paying their own counsel to prosecute the State Court Action.

B. Effect of Partial Summary Judgement

   In Johnson v. Lucas, 608 S.E.2d 336, 338 (N.C. Ct. App. 2005), the North Carolina Court of Appeals considered the effect of the trial court's grant of a defendant's motion for partial summary judgment where the trial court left several of the plaintiff's claims still pending. The Johnson court stated that "'[a] final judgment is one that determines the entire controversy between the parties, leaving nothing to be decided in the trial court." Id. (quoting Ratchford v. C.C. Mangum, Inc., 564 S.E.2d 245, 247 (N.C. Ct. App. 2002)). An order granting partial summary judgment is interlocutory. Id. (citing Travco Hotels, Inc. v. Piedmont Natural Gas Co., 420 S.E.2d 426, 428 (N.C. 1992)). Interlocutory means "interim or temporary, not constituting a final resolution of the whole controversy." Black's Law Dictionary (8th ed. 2004).

   There is a split of authority as to whether a subsequent final judgment is required to perfect a prejudgment attachment. In re Giordano, 169 B.R. 12, 12 (Bankr. D.R.I. 1994). To determine whether a prejudgment attachment constitutes a valid and perfected lien, superior to the trustee's interest in the subject property, a court must look to the relevant state law. Id. at 13. In this case, the Court must look to the law of North Carolina.

Pursuant to N.C. Gen. Stat. §1-440.1(a), an "[a]ttachment is a proceeding ancillary to a pending principal action, is in the nature of a preliminary execution against property, and is intended to bring property of a defendant within the legal custody of the court in order that it may subsequently be applied to the satisfaction of any judgment for money which may be rendered against the defendant in the principal action." The purpose of attachment is to simply conserve property for the execution after judgment. Bizzell v. Mitchell, 142 S.E. 706, 708 (N.C. 1928). If a plaintiff eventually prevails in the principal action, then he or she is allowed to have the final judgment satisfied out of the property attached. N.C. Gen. Stat. §1-440.46.

In North Carolina, a lis pendens notice "is a statutory device by which the world is put on notice that an order of attachment has been issued with respect to certain real property owned by a party against whom monetary judgment is sought." In re Medlin, 229 B.R. 353, 358 (Bankr. E.D.N.C. 1998)(quoting Edwards v. Brown's Cabinets and Millwork, Inc., 305 S.E.2d 765 (N.C. Ct. App. 1983)). A lis pendens notice "fixes the priority of the lien that arises when the order of attachment is subsequently perfected by judgment and levy." Medlin, 229 B.R. at 358. A lien on the real property will then relate back to the time at which the notice of lis pendens was docketed. N.C. Gen. Stat. 1-440.33(b)(1).

The State Court granted partial summary judgment in favor of the Ivesters against the Debtor and AFC. An order granting partial summary judgment is interlocutory, and, as such, is not a final judgment. The Ivesters secured an Order of Attachment against the Debtor, AFC, and Mrs. Bradshaw on the funds in any account at BB&T Bank, and against PublishTown and Lindsey Foundation in any account at BB&T Bank or Wachovia Bank. The Ivesters also secured a Certificate of Levy on the Bradshaws' real property, and the Certificate of Levy was placed on

7

the Lis Pendens docket on October 21, 2005 to effectuate a proper execution for the attachment

of real property pursuant to N.C. Gen. Stat. §1-440.17.  Such attachments and levies merely act

as devices to "conserve property for the execution" after final judgment.  Bizzell, 142 S.E. at

708.   Therefore, the Ivesters do not have a lien on the attached property superior to that of the

Trustee, who has the rights of a hypothetical lien creditor.  11 U.S.C. § 544(a).

Furthermore, even if partial summary judgment did act to perfect a lien for the Ivesters,

they would only have a lien on AFC's bank account at BB&T with a balance of $616.57.  None

of the other accounts disclosed at the hearing were in the name of either the Debtor or AFC,

against whom the partial summary judgment was entered.  There has been no summary judgment

entered against the other persons or entities disclosed to the Court.  The real property attachment

was against property jointly owned as tenants by the entirety by the Debtor and his spouse, and

summary judgment was not entered against Mrs. Bradshaw prior to the filing of the bankruptcy

petition.

C. The Application of Collateral Estoppel

The Ivesters argue in their post-hearing brief that the Court should grant relief from the

automatic stay based on the application of collateral estoppel.  The Ivesters assert that even

though a partial summary judgment is not a final judgment, it is not subject to collateral attack.

The Ivesters correctly assert that North Carolina law concerning collateral estoppel applies, In re

Fowler, 312 B.R. 287, 292 (Bankr. E.D.N.C. 2004), and that the partial summary judgment in

favor of the Ivesters constitutes "final judgment" for purposes of collateral estoppel.  See In re

Brown, 951 F.2d 564, 568 (3d Cir. 1991).  However, partial summary judgment was granted

against the Debtor and AFC for violations of North Carolina securities law.  There has been no

final adjudication against any party for the fraudulent conveyance of property, for receipt of

property that has been fraudulently conveyed, for alter ego, or for any of the other causes of

action that the Trustee asserts in the Adversary Proceeding.  Thus, collateral estoppel does not

apply.

D. The Authority to Prosecute Claims

The Ivesters cite In re Speir, 190 BR 657 (Bankr. N.D. Ala. 1995), for the proposition that

they should be allowed to prosecute the State Court Action, ahead of the Trustee.  In Speir, the

court found that a settlement between the trustee and the debtor could not be approved because

the trustee did not have any tangible interest in the subject property superior to or in excess of the

creditor.  Id. at 659.  The creditor in Speir had a final judgment entered in state court against the

debtor and properly recorded the judgment at least one year before the debtor filed for bankruptcy

relief.  Id. at 660.  Prior to the debtor's bankruptcy, the creditor filed an action in state court to set

aside, as a fraudulent conveyance, the transfer of the debtor's home to his wife.  Id.  The court

held that, while it is the general rule that after filing bankruptcy that a creditor of a debtor cannot

maintain an action to set aside a fraudulent conveyance, a different rule applies when the creditor

has a lien superior to the trustee under state law, which the creditor had by reason of Alabama

statutory law.  Id. at 662-63.  This case is clearly distinguishable from Speir because, as

mentioned above, the Ivestors have not secured a final judgment and do not have a perfected

superior interest in the real and personal property that is subject to the attachment.

Pursuant to Section 544 of the Bankruptcy Code, a trustee may avoid any transfer of real

property of the debtor that would be avoidable by a bona fide purchaser.  In re Suggs, No. 05-

51313, slip op. at 2 (Bankr. M.D.N.C. October 19, 2006)(2006 WL 2965790).  As to personal

property, a trustee has the status of a judgment lien creditor on the date of bankruptcy.  11 U.S.C. § 544(a)(1), (2).

The language and purpose of the Bankruptcy Code support restrictions on the standing of a creditor to bring a cause of action outside of the bankruptcy court.  Whirlpool Corp. v. CIT Group/Business Credit, Inc., 258 F. Supp. 2d 1140 (D. Haw. 2003).  "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim."  Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999).  Section 541of the Bankruptcy Code creates an estate upon the filing of bankruptcy, and provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate.  11 U.S.C. § 541(a)(1).  The term "property of the estate " is broad enough to include intangible assets, such as causes of action.  11 U.S.C. § 541(a); see In re Bogdan, 414 F.3d 507, 512 (4th Cir. 2005)(citing Polis v. Getaways, Inc. (In re Polis), 217 F.3d 899, 901 (7th Cir. 2000)).

Creditors lack standing to bring "causes of action [that] are . . . similar in object and purpose to claims that the trustee could bring in bankruptcy," regardless of whether such claims are technically part of the estate of the bankrupt.  Ruppert, 187 F.3d at 441 (affirming the dismissal of various state law claims that were "similar in object and purpose" to a bankruptcy trustee's potential fraudulent conveyance claim).  Until there has been abandonment by the trustee of his potential claim(s), a creditor cannot proceed with its claims outside of the bankruptcy court.  Id. (citing Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 136 (4th

Cir. 1988)).[3]

Section 544 of the Bankruptcy Code "gives the Trustee the status of a hypothetical lien

creditor in attacking a transfer under a state fraudulent conveyance statute but, while it is the

federal law which provides the trustee with his 'strong-arm' power, his exercise of such power

and its extent are governed entirely by the applicable state law." Havee v. Belk, 775 F.2d 1209,

1218 (4th Cir. 1985)(citing Angeles Real Estate Co. v. Kirsten, 737 F.2d 416 (4th Cir. 1984)).

This confers on the trustee "'no greater rights than those accorded by the applicable [state] law to

a creditor holding a lien by legal or equitable proceedings.'" Havee, 775 F.2d at 1218 (quoting In

the Matter of Investors Funding Corp. of New York, 452 F. Supp. 771, 775 (S.D.N.Y. 1978)).

Section 548(a) of the Bankruptcy Code allows a bankruptcy trustee to avoid fraudulent

conveyances. It provides that the trustee may avoid an obligation "if the debtor voluntarily or

involuntarily . . . incurred such obligation with actual intent to hinder, delay, or defraud any

entity to which the debtor was or became, on or after the date that such transfer was made or such

obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A). When a creditor brings a state

law challenge to a transaction that a bankruptcy trustee could avoid as a fraudulent conveyance,

the state law cause of action is "so similar in object and purpose" to the fraudulent conveyance

claim that the creditor lacks standing to assert it. Poth v. Russey, 99 Fed. Appx. 446, 457 (4th

---

[3]"To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." Ruppert, 187 F.3d at 442 (citing Litchfield Co. v. Anchor Bank (In re Litchfield), 135 B.R. 797, 804 (Bankr. W.D.N.C. 1992))(even though claims of the debtor and individual creditor are not identical, the court can stay proceedings initiated by the creditor in order to avoid interfering with the property of the estate). "Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process." Id. at 441.

Cir. 2004) (quoting <u>Ruppert</u>, 187 F.3d at 441).  "[I]f the trustee pursues an action to recover property fraudulently conveyed, then any property recoverable by the trustee that is subject to a lien continues to be subject to the lien after recovery."  <u>Coleman v. J&B Enterprises, Inc. (In re Veterans Choice Mortgage</u>), 291 B.R. 894, 896 (S.D. Ga. 2003).

Federal law provides the Trustee with "strong-arm" powers and North Carolina law determines the extent to which he may exercise that power.  As the Court has already determined, the Ivesters do not have a perfected interest superior to the interest of the Trustee.  The fraudulent conveyance avoidance claims that are being asserted by the Ivesters are ones that belong to the estate because they arise under the substantive provisions of the Bankruptcy Code, namely Section 548(a), and such claims are reserved to the trustee.  <u>See Ruppert</u>, 187 F.3d at 441.  The Trustee has filed the Adversary Proceeding to, among other things, avoid the transfer of property pursuant to Section 548 of the Bankruptcy Code, and therefore has not abandoned his claims.  Thus, the Ivesters lack standing to continue with the prosecution of the State Court Action.

<u>E. The Authority to Perfect an Interest in Property Pursuant to Section 546(b) of the Bankruptcy Code</u>

The Ivesters argue that the automatic stay is not intended to prevent a creditor entitled to the protection of Section 546(b)(1) from taking post-petition action to fully perfect its interest.  The Ivesters rely chiefly on <u>In re Thunderbolt Realty Trust</u>, 190 B.R. 11, 13 (Bankr. D. Mass. 1995), to support their argument that the actions they seek to pursue fall within the ambit of Section 546(b) and that, therefore, they should be able to perfect the interest in property that they have already acquired (i.e., the attachment).

Section 362(b) does not operate to stay actions to perfect a security interest post-petition

under circumstances delineated in Section 546(b).  11 U.S.C. § 326(b)(3).   Section 546(b)(1) of

the Bankruptcy Code provides in part:

> The rights and powers of the trustee under sections 544, 545, and 549 of this title are
> subject to any generally applicable law that– (A) permits perfection of an interest in
> property to be effective against an entity that acquires rights in such property before
> the date of perfection.

11 U.S.C. § 546(b)(1).  The legislative history of Section 546(b) states that this exception was

devised to provide for holders of a purchase-money security interest, which, due to the

intervening bankruptcy filing, were prohibited from perfecting their liens.  S. Rep. No. 95-989, at

86 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5872; H. Rep. No. 95-595, at 371 (1977), as

reprinted in 1978 U.S.C.C.A.N. 5963, 6327.  The House and Senate reports provide that the

exception was not developed to create new rights, but is designed to protect the rights of those

protected by state law by allowing them to perfect their liens.  Id.  The limitation on the Trustee's

avoidance powers pursuant to Section 546(b)(1) normally applies to the perfection of a

mechanic's or materialman's lien or a purchase money security interest.  See, e.g., In re United

American, Inc., 327 B.R. 776, 785 (Bankr. E.D. Va. 2005)(discussing materialman's lien);

WWG Indus., Inc. v. United Textiles, Inc., (In re WWG Indus., Inc.), 772 F.2d 810, 812 (11th

Cir. 1985)(discussing mechanic's lien); In re Saberman, 3 B.R. 316, 318-319 (Bankr. N.D. Ill.

1980)(discussing mechanic's lien).

　　　In Thunderbolt, a creditor brought suit in state court against a debtor and numerous other

defendants, alleging that the debtor had defrauded him in a transaction for the purchase of a

truck.  190 B.R. at 13.  The case was tried, and during trial, but before the entry of judgment, the

court granted the creditor an attachment against the real estate and the deposit account of the

debtor.  Id.  The attachments were properly recorded the same day.  Id.  The trial concluded, and

the court took the matter under advisement. Id. Several months later, while the matter was still

under advisement, the debtor filed for Chapter 11 relief. Id. After the bankruptcy filing, the state

court rendered its decision in favor of the creditor and entered judgment accordingly.[4] Id. The

parties appealed to the state appellate court and during the course of the appeal, the creditor

became aware of the Chapter 11 filing. Id. at 14. The creditor did not seek relief from stay to

continue prosecution of the appeal, nor did the debtor request such action because the debtor

wanted to prosecute the appeal. Id.[5] The appeals court affirmed the judgment, and the sheriff

subsequently levied execution against the debtor's property. Id.

In analyzing the validity of the creditor's judgment, the Thunderbolt court considered

several factors in determining whether to grant relief from the automatic stay in order to validate

the judgment of the state court. Id. The court noted that the case had been fully tried; the

judgment had withstood a contested appeal; and it would be a waste of judicial resources to

require a repetition of all the litigation. Id. Further, the creditor did not learn of the debtor's

bankruptcy filing until the appeal was in process and after the state court's entry of judgment. Id.

Finally, the debtor wished to prosecute its own appeal. Id. The court held that, under the facts of

the case, it was appropriate to annul the stay under Section 362(d) of the Bankruptcy Code and

that Section 546(b) of the Bankruptcy Code applied to the creditor's attachment liens and the

post-petition execution which perfected such liens. Id. at 14-15.

The facts of this case are clearly distinguishable from the facts of Thunderbolt. The State

---

[4] The debtor never provided the state court with notice of his bankruptcy filing. 190 B.R. at 13-14.

[5] The Massachusetts Court of Appeals was never informed of the debtor's pending bankruptcy.

Court Action case has not been tried, final judgment has not been entered, and the Debtor does

not wish to proceed with the State Court Action.  In <u>Thunderbolt</u>, unlike this proceeding, the

trustee did not attempt to challenge the judgment, intervene and/or remove the state court

proceeding, or file a similar proceeding on behalf of the bankruptcy estate.  Therefore,

<u>Thunderbolt</u> does not support the Ivesters' attempts to obtain relief from stay in this case.  The

Ivesters do not have a mechanic's lien, materialman's lien, or a purchase money security interest,

which are the types of interests contemplated by Congress.  Section 546(b)(1) of the Bankruptcy

Code does not entitle the Ivesters to relief from the automatic stay.

### III. CONCLUSION

For the forgoing reasons, the Motion for Relief will be denied.  The Trustee has sole

standing to bring the actions set forth in the Adversary Proceeding and, if the Trustee is

successful, the State Court Action will become moot.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate

order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**PARTIES IN INTEREST**

| | |
|---|---|
| Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 | Gerald S. Schafer, Esq.<br>220 Commerce Place<br>Greensboro, NC 27401 |
| Michael D. West<br>Bankruptcy Administrator<br>P.O. Box 1828<br>Greensboro, NC 27402 | William P. Miller, Esq.<br>Roberson Haworth & Reese, PLLC<br>300 N. Main Street, Ste. 300<br>P.O. Box 1550<br>High Point, NC 27261 |
| Alternative Financial Concepts, L.L.C. by serving its registered agent, Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 | Fredia Nixon Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 |
| Lyndsey Foundation<br>by serving ts registered agent, Timothy L. Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 | PublishTown, L.L.C.<br>by serving its registered agent, Timothy L.Bradshaw<br>2606 Woods End Lane<br>Greensboro, NC 27410 |

James J. Hefferan
1001 West Fourth Street
Winston-Salem, NC 27101-2400