IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DOUGLAS R. IVESTER, JR., and )
BARBARA C. IVESTER,          )
                             )
        Appellants,          )
                             )
    v.                       )    Civil Action No.: 1:07cv00217
                             )
WILLIAM P. MILLER, Trustee,  )
                             )
        Appellee.            )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

This is an appeal from a decision of the bankruptcy court denying appellants Douglas R. Ivester, Jr., and Barbara C. Ivester (collectively, "the Ivesters") relief from the automatic stay in order to prosecute a pre-petition state court action against debtor Timothy L. Bradshaw ("Bradshaw"). For the reasons stated herein, the bankruptcy court's decision is affirmed.

**I.   FACTS**[1]

Bradshaw served as a financial advisor to the Ivesters from 2003-04. (Doc. 9 at 6.) During this time, the Ivesters placed almost one million dollars, representing virtually all of their retirement savings, under his management. (Id. at 6, 7.)

---

[1]   The Trustee concurs with the Ivesters' statement of facts for this appeal, with limited exceptions. (Doc. 11 at 10.)

Bradshaw invested this money in a scheme, known as the Capital Appreciation Program ("CAP"), involving the sale and leaseback of mobile billboards, a form of advertisements mounted on trucks that roamed streets and highways. (*Id.* at 5-6.) Bradshaw allegedly falsely represented that the investments were fully secured and would be returned upon demand. (*Id.* at 6.) Only a fraction of the purchased billboards were actually produced. (*Id.*) The Ivesters charge that Bradshaw's CAP constituted an illegal Ponzi scheme, selling illegal securities that netted them a total return of only $55,219.57 from their now-exhausted principal investment. (*Id.* at 6, 7.) Unknown to the Ivesters at the time, halfway through the investment period the North Carolina Secretary of State issued a cease and desist order against Bradshaw and his related entities. (*Id.* at 7.) Bradshaw stunningly chose not to disclose the order for five months, enabling him to swindle the Ivesters out of hundreds of thousands of dollars more (*id.* at 7 n.4), sadly proving yet again Aesop's ancient aphorism that "greed oft o'erreaches itself."

Bradshaw also served as the president, sole member, and manager of Alternative Financial Concepts, L.L.C. ("AFC"), a North Carolina limited liability company. (*Id.* at 5); *In re Bradshaw*, No. 06-11111, 2007 Bankr. LEXIS 618, at *3 (Bankr.

2

M.D.N.C. Feb. 16, 2007).  The Ivesters allege that, beginning in September 2003, Bradshaw transferred substantial sums of money from AFC's bank accounts to other bank accounts that he, or his wife, Fredia Bradshaw, controlled.  (Doc. 9 at 8.)  These transfers included more than $90,000 to the bank account of the Lyndsey Foundation, a special purpose trust organized and controlled by Bradshaw and his wife; $100,000 to a brokerage account in Bradshaw's name and subsequently to an account at American Partners Federal Credit Union in Fredia Bradshaw's name; $134,500 to PublishTown, L.L.C., a North Carolina limited liability company controlled by Bradshaw; and $425,000 to a joint bank account in the name of Bradshaw and his wife.  (Id.); _In re Bradshaw_, 2007 Bankr. LEXIS 618, at *4.  The Bradshaws also allegedly used $124,910.44 from AFC's bank account to make a down payment on a home located on Woods End Lane in Greensboro, North Carolina.[2]  (Doc. 9 at 8 n.5.)

On February 10, 2005, the Ivesters sued Bradshaw, his wife, and AFC in the Superior Court of Davie County, North Carolina, alleging violations of North Carolina law governing securities, fraud and breach of fiduciary duty, and fraudulent transfers

---

[2]  The Bradshaws hold the Woods End Lane property as tenants by the entirety.  _In re Bradshaw_, 2007 Bankr. LEXIS 618, at *6 n.2.  It is encumbered by a lien in favor of Washington Mutual Bank, F.A., to secure an obligation of $400,000.00.  Id.

3

(the "state court action").[3]   (Id. at 8-9.)   On February 11, 2005, an order of attachment was issued in the state court action and levied upon a joint bank account held by Bradshaw and his wife at Branch Banking and Trust ("BB&T") in the amount of $4,612.07 and a bank account held by AFC at BB&T in the amount of $616.57, pending judgment.  (Id. at 9, 9 n.7.)   The Guilford County Sheriff also levied upon the Woods End Lane property, and a certificate of levy was entered on the lis pendens docket on October 21, 2005.  (Id. at 9 n.7.)   In March 2005, additional attachment orders were issued in the state court action and levied upon an account in the name of Fredia Bradshaw at American Partners Federal Credit Union in the amount of $55,971.29, an account held by PublishTown at BB&T in the amount of $13,894.63, and an account held by the Lyndsey Foundation at Wachovia Bank in the amount of $7,199.23.  (Id. at 9.)

On December 1, 2005, the Davie County Superior Court granted partial summary judgment in favor of the Ivesters, holding Bradshaw and AFC jointly and severally liable for $915,280.43, plus interest, costs and attorneys' fees on the claim of offering and selling unregistered securities in

---

[3]   The Ivesters amended their Complaint to add the Lyndsey Foundation and PublishTown, L.L.C., as defendants.  (Doc. 9 at 8-9.)

4

violation of North Carolina law.[4]  (Id. at 10.)  Trial on the remaining claims was scheduled for October 2, 2006, but Bradshaw filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code on September 21, 2006, which stayed further activity.  (Id.)  The Ivesters filed a motion for relief from automatic stay on December 14, 2006.  (Id. at 10-11.)  Shortly thereafter, the Trustee removed the state court action to the United States District Court for the Middle District of North Carolina (which referred the case to the bankruptcy court), pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure,[5] and filed an objection to the motion for relief from stay.[6]  In re Bradshaw, 2007 Bankr. LEXIS 618, at *5-6.

---

[4]  The Ivesters raise no claim on appeal as to whether this partial summary judgment constitutes a judgment entitling them to priority over the Trustee.

[5]  Rule 9027 provides in relevant part:

> When a claim or cause of action is removed to a district court, any attachment or sequestration of property in the court from which the claim or cause of action was removed shall hold the property to answer the final judgment or decree in the same manner as the property would have been held to answer final judgment or decree had it been rendered by the court from which the claim or cause of action was removed."

Fed. R. Bankr. P. 9027(i).

[6]  The removal notice is dated December 20, 2006, Ivester v. Alternative Fin. Concepts, L.L.C., No. 06-11111, Notice of Removal (Dec. 20, 2006); the bankruptcy court's opinion indicates removal occurred on January 5, 2007.  In re Bradshaw, 2007 Bankr. LEXIS 618, at *5-6.

On January 10, 2007, the Trustee instituted an adversary proceeding, pursuant to section 548 of the Bankruptcy Code, seeking a determination that Fredia Bradshaw, AFC, the Lyndsey Foundation, and PublishTown were alter egos of Bradshaw and to set aside certain transfers of property to them. (Doc. 5 Ex. 11 at 12-13, 15-16, 16-17.)  The Ivesters never sought to intervene in the adversary proceeding.

Following a hearing, the bankruptcy court denied the Ivesters' motion for relief from the automatic stay on February 16, 2007.  *In re Bradshaw*, 2007 Bankr. LEXIS 618, at *3, 25.  In material part, the court concluded that the Ivesters' interests in the attached property were not perfected because no final judgment was entered, thus subordinating their interests to the Trustee's strong arm powers.  Id. at *12, 19.  To grant relief from stay so the Ivesters could obtain a final judgment, the court held, would prejudice the estate and other unsecured creditors.  Id. at *8.  Thus, no relief from stay was warranted under the Bankruptcy Code, the bankruptcy court concluded, either on a mandatory or discretionary basis.  Id. at *8, 25.

The Ivesters filed the instant appeal on February 26, 2007. (Doc. 9 at 5.)  During the pendency of this appeal, the bankruptcy court entered default against Bradshaw in the fraudulent transfer adversary proceeding (Doc. 11 Ex. A), and

6

granted  summary  judgment  to  the  Trustee.  Miller v. Alternative
Fin. L.L.C. (*In re* Bradshaw), No. 07-2003, Order Granting
Summary Judgment 2 (Bankr. M.D.N.C. Aug. 3, 2007).  The parties
reported  at  oral  argument  that  the  bankruptcy  court  has  also
denied  the  Ivesters'  motion  to  remand  the  state  court  action,
which has remained stayed.

## II.  JURISDICTION AND STANDARD OF REVIEW

This  court  has  jurisdiction  pursuant  to  28  U.S.C.  §
158(a)(1) and Fed. R. Bankr. P. 8001(a).  On appeal, a district
court reviews a bankruptcy court's findings of fact for clear
error and its conclusions of law *de novo.*  Fed. R. Bankr. P.
8013; Devan v. Phoenix Am. Life Ins. Co. (*In re* Merry-Go-Round
Enters., Inc.), 400 F.3d 219, 224 (4th Cir. 2005).  A court "may
affirm, modify, or reverse a bankruptcy judge's judgment, order,
or decree or remand with instructions for further proceedings."
Fed. R. Bankr. P. 8013.

## III. ANALYSIS

The  Ivesters  claim  that  their  prejudgment  attachment  liens
levied  upon  the  real  and  personal  property  in  the  state  court
action  give  them  priority  over  the  Trustee  as  to  those  assets
and  contend  that  the  bankruptcy  court  erred  in  refusing  on  the
brink  of  trial  to  grant  relief  from  stay  to  allow  them  to
proceed  to  judgment.  Specifically,  the  Ivesters  challenge  the

7

bankruptcy court's conclusions that (1) their attachment liens failed to grant them priority over the Trustee on behalf of other unsecured creditors; (2) they did not qualify for mandatory relief from the automatic stay, pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b)(1)(A); (3) they failed to demonstrate sufficient "cause" to warrant discretionary relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1); and (4) they lacked standing to prosecute their fraudulent transfer claims. (Doc. 9 at 2-3.)

    The Trustee argues that the Ivesters' attachment liens were not "valid and perfected" under state law because the liens required a final judgment, thereby subordinating the Ivesters' interest in the property to that of the Trustee.  (Doc. 11 at 12.)  He further argues that the bankruptcy court did not err in denying relief from stay on a mandatory basis because the attachment liens do not fall within the exception of sections 362(b)(3) and 546(b)(1)(A).  (Id. at 21-22.)  The Trustee finally argues that the Ivesters lack standing to pursue their claims because the claims are so similar in object and purpose to those in the Trustee's fraudulent conveyance action as to be reserved solely to the Trustee and, now that the bankruptcy court has granted summary judgment in that action, the state

8

court action is barred under the doctrine of res judicata, mooting further consideration. (Id. at 8, 22-23.)

Much of the analysis turns on the Ivesters' claim that their attachment liens enjoy priority that bars the Trustee from avoiding them under his strong arm powers. Thus, that issue will be addressed first.

A. **Priority**

Under section 544 of the Bankruptcy Code, a trustee on the date of the petition enjoys the status of, or may avoid any transfer of property of the debtor that is avoidable by, a hypothetical judicial lien creditor and, as to real property, a hypothetical bona fide purchaser. 11 U.S.C. § 544(a)(1)-(3); In re Suggs, 355 B.R. 525, 527 (Bankr. M.D.N.C. 2006). A "judicial lien" is defined in the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "transfer" is defined broadly to include the creation of a lien. Id. § 101(54)(A).

Exercising his "strong arm powers," a trustee can disregard the rights of subsequent creditors taking priority after him, but his rights are subordinate to those with valid liens as of the petition date. Id. § 544(a)(1), (3); Perlow v. Perlow, 128 B.R. 412, 415 (Bankr. E.D.N.C. 1991). The validity of a lien is

9

determined by state law.  *Butner v. United States*, 440 U.S. 48,
55 (1979); *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir. 1985).

The bankruptcy court held that on the petition date the
Trustee's interest in the real property and bank accounts had
priority over the Ivesters' prejudgment attachment liens thereon
because the latter remain unperfected until the entry of a final
judgment in the state court action, which had not occurred.  *In
re Bradshaw*, 2007 Bankr. LEXIS 618, at *12.  The Ivesters argue
that under North Carolina law their liens were perfected upon
levy, which occurred well before the filing of the petition.
(Doc. 9 at 15-16, 20, 22, 23-26; Doc. 12 at 2-6.)  The Trustee
sides with the bankruptcy court's analysis.  (Doc. 11 at 12-16.)

In North Carolina, attachment liens are governed by N.C.
Gen. Stat. §§ 1-440.1 through 1-440.46 (2007).  Because this
attachment lien statute appears to prescribe different priority
rules for liens on different property types, the priority rules
as to the real and personal property will be addressed
separately.

### 1.  Real Property

N.C. General Statute § 1-440.1 provides that an attachment

is a proceeding ancillary to a pending principal
action, is in the nature of a preliminary execution
against property, and is intended to bring property of
a defendant within the legal custody of the court in
order that it may subsequently be applied to the

10

> satisfaction of any judgment for money which may be
> rendered against the defendant in the principal
> action.

Under the statutory scheme, an attachment lien cannot be sought

without an underlying lawsuit and remains wholly dependent upon

the lawsuit's success for conversion into an enforceable

judgment lien.  Edwards v. Brown's Cabinets & Millwork, Inc., 63

N.C. App. 524, 528, 305 S.E.2d 765, 768 (N.C. App.), cert.

denied, 309 N.C. 632, 308 S.E.2d 64 (N.C. 1983).

A final judgment is not expressly required to "perfect" an

attachment lien in real property, to the extent "perfection" is

meant to stake the plaintiff's place in line vis-à-vis

subsequent creditors.[7]    Section 1-440.33(b) instead plainly

---

[7]  Courts nationwide reflect confusion over the meaning of "perfection"
in this context and differ on the issue of whether an attachment lien
may be "perfected" prior to the entry of a final judgment so as to
take priority over a trustee. Compare In re Giordano, 169 B.R. 12, 13
(Bankr. D.R.I. 1994) (holding that a "prejudgment attachment
constitutes a valid and perfected lien which is superior to the rights
of the Trustee, notwithstanding that judgment has not been entered"),
aff'd, 188 B.R. 84 (D.R.I. 1995), Quadrel Leasing de P.R., Inc. v.
Carlos A. Rivera, Inc. (In re Carlos A. Rivera, Inc.), 130 B.R. 377,
382, 383 (Bankr. D.P.R. 1991) (holding that the "pre-judgment
attachment of debtor's property . . . constitutes a valid and
perfected lien within the meaning of the Bankruptcy Code," even though
the attachment lien was merely an inchoate right), Yumet & Co. v.
Delgado (In re E. Del Pilar Hermano & Co.), 243 F. 519, 520 (1st Cir.
1917) (holding that a "lien is considered as obtained when the
attachment is made, and a subsequent judgment for the plaintiff as
doing no more than establish the fact that it was rightly obtained"),
and FDIC v. Debtor & Trustee (In re Villaronga), 111 B.R. 13, 16-17
(Bankr. D.P.R. 1989) (holding that prejudgment attachment is a valid
lien, although inchoate, and entry of judgment therefore does not
"perfect" it but removes its contingent character), with Diamant v.
Kasparian (In re S. Cal. Plastics, Inc.), 165 F.3d 1243, 1246 (9th

11

provides that a lien in real property attaches upon the docketing and indexing of the levy by the county clerk. N.C. Gen. Stat. § 1-440.33(b). If a prior notice of lis pendens has been recorded, the lien relates back to the time of the filing of that notice, otherwise the priority of an attachment lien arises upon the docketing of the levy. Id. § 1-440.33(b), (d)-(e). Unlike other North Carolina statutes governing liens,[8] section 1-440.33(b) never uses the term "perfect" or itemizes the requirements necessary to "perfect" an attachment lien.

The statutory scheme contemplates that a lienor must eventually obtain a final judgment in the principal action to execute on the attachment lien. E.g., id. § 1-440.46 (setting forth the procedure for executing a judgment on attached property). The statutory references to a "judgment" appear to relate to *enforcement* of the attachment lien, as opposed to its *perfection*. See generally Concrete Structures, Inc. v.

---

Cir. 1999) (quoting California law as providing that "'[t]he attaching creditor obtains only a potential right or a contingent lien . . .', which is perfected or converted to a judgment lien upon judgment for the creditor'" (internal citations omitted)), and In re Savidge, 57 B.R. 389, 391 (D. Del. 1986) (holding that a lien created by a writ of attachment was unperfected until judgment). In the final analysis, each decision turns on the peculiarities of state law.

[8]   E.g., N.C. Gen. Stat. §§ 44A-11 (perfecting mechanics', laborers', and materialmen's liens on real property of owner); 44A-18(6) (perfecting mechanics', laborers', and materialmen's liens on funds of non-owner); 44A-55 (perfecting liens on aircraft); 44-50 (perfecting liens on recoveries for personal injuries); 44-69.3(c) (perfecting liens on the assets of milk distributors); 44-86(d) (perfecting liens for overdue child support).

12

Tidewater Crane & Rigging Co. (*In re* Concrete Structures), 261 B.R. 627, 639-40 (E.D. Va. 2001) (ruling in the context of mechanics' liens that "enforcement is not a constituent part of perfection"); *In re Carlos A. Rivera, Inc.*, 130 B.R. at 381 (finding that the term "perfects" is frequently "used in the sense that the prejudgment attachment lien will relate back to the date of its presentation, and that it can only be enforced once a final judgment is obtained by claimant").

The parties have not cited, nor is the court aware of, any decision of the North Carolina Supreme Court addressing the "perfection" of attachment liens in real property under section 1-440.33(b). However, the North Carolina Court of Appeals did so in Edwards, 63 N.C. App. at 528, 305 S.E.2d at 768. In Edwards, the plaintiff filed an action to enjoin the enforcement of a judgment lien on real property her daughter had conveyed to her. 63 N.C. App. at 525, 305 S.E.2d at 766. An attachment lien had been obtained against the property before judgment was entered. Id. The plaintiff contended that the lis pendens in the prior action was ineffective because the underlying order of attachment was not levied within the time period mandated by statute. Id. at 527-28, 305 S.E.2d at 767-68. In rejecting the challenge, the court held that the plaintiff was on constructive notice of the lis pendens and was estopped from collaterally

13

attacking the prior attachment lien in a separate proceeding because the statute authorizing attachment also authorized procedures for contesting its validity in the prior action. _Id._ at 559, 305 S.E.2d at 768-69.

In so holding, the _Edwards_ court reviewed the law of attachment, stating that an attachment lien in real property is "perfected" upon docketing and levy, without the entry of a final judgment. _Id._ at 528, 305 S.E.2d at 768. The court observed that "[w]hen an order of attachment is _perfected by a levy_, a lien of attachment is created thereby which establishes the lienor's claim as against all other creditors and subsequent lienors." _Id._ (emphasis added). The court further concluded that "[w]ithout a valid levy, the order of attachment is not perfected so as to create a lien of attachment, but remains executory until tolled by judgment in the principal action, . . . or until perfected by a levy under an alias or pluries order." _Id._ The court did not define obtaining a judgment as a constituent part of the perfection process for attachment liens. To the contrary, it unequivocally stated that perfection occurs upon levy. The Ivesters argue that _Edwards_ entitles them to

14

claim "perfected" status with respect to the attachment lien on real property.[9]  (Doc. 9 at 15.)

The Trustee argues that <u>Edwards</u> permits an order of attachment to be perfected only by levy *and* judgment, based on a reference to the case found in <u>Doub v. Hartford Fire Ins. Co.</u> (<u>In re</u> <u>Medlin</u>), 229 B.R. 353, 355, 358 (Bankr. E.D.N.C. 1998). (Doc. 11 at 12-14.)  In <u>In re</u> <u>Medlin</u>, Hartford levied its order of attachment on the debtor's real property on June 14, 1994, recorded lis pendens on September 19 and 20, 1994, and obtained final judgment on July 18, 1995.  229 B.R. at 355.  The debtor filed bankruptcy on October 2, 1995, putting the judgment within the 90-day preference window.  <u>Id.</u> at 355, 356.  The issue was

---

[9]  <u>Edwards</u> comports with decisions of the North Carolina Supreme Court under prior versions of section 1-440.33(b).  In <u>Voehringer v. Pollock</u>, 224 N.C. 409, 411, 30 S.E.2d 374, 376 (1944), the court held that "[a] levy on real property is made effective by the endorsement thereof on the execution or warrant of attachment."  The court also stated that "[t]he jurisdiction of the court derived from a levy under a warrant of attachment dates from the levy, but the lien becomes effective as to third parties, when certified to the clerk of the Superior Court and indexed in the manner prescribed in the statute." <u>Id.</u>  In <u>Newberry v. Meadows Fertilizer Co.</u>, 203 N.C. 330, 338, 166 S.E. 79, 82 (1932), the court stated that "[w]hen the officer has served the warrant of attachment . . . by levying on the real estate of the defendant, and has complied with the provisions of the statute, with respect to the . . . certificate to the clerk of the Superior Court, the plaintiffs have a lien on such property, which is enforceable against all subsequent purchasers from the defendant." <u>See</u> <u>also</u> <u>Summers Hardware Co. v. Jones</u>, 222 N.C. 530, 533, 23 S.E.2d 883, 884 (1943); <u>Evans v. Alridge</u>, 133 N.C. 378, 379, 45 S.E. 772, 772 (1903) (noting that the levy of the attachment constitutes a lien as of the date it is certified to the clerk of the superior court).

15

whether the lien arising from the judgment[10] entered during the 90-day preference period could be avoided as a transfer, or whether it related back to the lis pendens recorded eleven months before the petition. Id. at 356. The court held that the judgment entered during the preference window was not preferential because the recording of the lis pendens itself established the priority of Hartford's rights as against subsequent lienors and thus constituted a transfer. Id. at 358. In reaching this decision, the court cited Edwards for the proposition that, under North Carolina law, a lis pendens "fixes the priority of the lien that arises when the order of attachment is subsequently perfected by judgment *and* levy." Id. at 358 (citing Edwards, 63 N.C. App. at 528, 305 S.E.2d at 768) (emphasis added).

    The Trustee seizes upon the court's reference to an apparent conjunctive test. (Doc. 11 at 13-14.) Upon close analysis, however, the court's ultimate holding turned on the fact that priority was established as of the date of the properly recorded notice of lis pendens, which occurred after the levy on the order of attachment. The court even emphasized that the rendition of the judgment during the preference period

---

[10]   This refers to the *judgment* lien, as distinguished from the *attachment* lien that arose by virtue of the levy.

was inconsequential because it "did not add to Hartford's rights to the property" and "gave Hartford nothing more than the rights it already had" by virtue of the properly recorded lis pendens. Id. at 358, 358 n.2. Thus, In re Medlin does not hold that a judgment is necessary in order to fix the *priority* of a party's interest in real property after levy and a properly recorded lis pendens.

The Ivesters in turn point to In re Suggs, where the court held that a trustee may not exercise his strong arm powers under section 544 to avoid a lien of which he has constructive notice through a lis pendens. 355 B.R. 525, 528-29 (Bankr. M.D.N.C. 2006). In so doing, the court cited In re Medlin for the proposition that, under North Carolina law, a "lis pendens preserves the priority of a lien that arises after an order of attachment has been perfected by judgment and levy." Id. at 528 (citing *In re* Medlin, 229 B.R. at 358). Importantly, the court found that the lender's nominee had filed a lis pendens but had not obtained a final judgment in its state court lawsuit (seeking a declaratory judgment that the debtor was the fee simple owner of the real property) before that action was stayed by the bankruptcy petition. Id. at 527. Therefore, to say, as the Trustee suggests, that the court's explication of the law implied a requirement of judgment for perfection of the lien

17

would be not only unnecessary to, but indeed unsupportive of, its conclusion that the creditor's priority rested on the pre-petition recordation of the lis pendens notwithstanding the absence of a final judgment. The trustee's hypothetical lien creditor status was consequently subordinate to the creditor's lien. Id. at 529. Also important to the court's decision to grant stay relief appears to have been the fact that the lender's action sought to enforce its deed of trust (which by fluke had not been recorded) which would absorb all the equity in the property, leaving nothing for the trustee to realize, anyway. Id. Thus, the court concluded that granting relief from stay to enforce the lien would not prejudice the trustee.

Finally, the Trustee cites Bizzell v. Mitchell, 195 N.C. 484, 142 S.E. 706 (1928). In Bizzell, the North Carolina Supreme Court never discussed the actions necessary to perfect a prejudgment attachment. At most, Bizzell stands for the unremarkable proposition that "the purpose of an attachment is to conserve the property for eventual execution after the action shall have proceeded to judgment." Id. at 487, 142 S.E. at 708.

Based on the North Carolina attachment lien statute and relevant case law, the court concludes that the Ivesters "perfected" their attachment lien in the real property on October 21, 2005, the date of levy and recordation of their lis

18

pendens, almost a year before the petition date. This staked their place in line ahead of other creditors, including the Trustee, but subject to an important condition: entry of a final judgment in the state court action. Under North Carolina attachment law and in contrast to judgment liens and other secured liens, at the very moment of the petition the Ivesters' lien remained inchoate, fully dependent upon the resolution of the underlying state court action. N.C. Gen. Stat. §§ 1-440.1, 1-440.46. Notwithstanding this contingency, the Trustee, who takes a debtor's real property with the rights of a bona fide purchaser, was subject to the attachment lien. The Ivesters' interest in the real property therefore remained superior to that of the Trustee as long as the Ivesters' state court action remained viable and until they proceed to judgment successfully.[11] Whether and when the Ivesters should be permitted to proceed to judgment depends on other factors, including whether relief from stay is warranted, as discussed infra.

---

[11]  This result is also consistent with the terms of Bankruptcy Rule 9027, which provides for the protection of any attachment previously obtained in the removed state court action, as required under state law. Fed. R. Bankr. P. 9027; see supra note 5.

##### 2.    Bank Accounts

The North Carolina attachment statutory scheme clearly contemplates that a creditor may acquire an attachment lien in intangible property, such as bank accounts.[12]   For example, section 1-440.4 provides that "*[a]ll of a defendant's property* within this State which is subject to levy under execution . . . is subject to attachment."   N.C. Gen. Stat. § 1-440.4 (emphasis added).   Section 1-440.15(5) prescribes the method for levying on intangible property.   Id. § 1-440.15(5); Ward v. Kolman Mfg. Co., 267 N.C. 131, 135, 148 S.E.2d 27, 30 (1966) ("Garnishment is a proper ancillary remedy by which to discover intangible property rights and subject them to attachment.").

---

[12]    Although courts have not defined the term "tangible personal property" in the context of section 1-440.33(c), they have classified bank accounts as intangible property.   Robinson v. Powell, 348 N.C. 562, 563, 500 S.E.2d 714, 715 (1998) (noting that action "concerns certain stocks, bonds, bank accounts, and other intangible investments"); see, e.g., Allstate Ins. Co. v. Russo, 829 F. Supp. 24, 27 (D.R.I. 1993) (noting bank deposits are "intangible choses in action"); Cartwright v. Deposit Guar. Nat'l Bank, 675 So. 2d 847, 847-48 (Miss. 1996) (holding bank account to be "incorporeal personal property"); Grochowski v. Larson (In re Estate of Larson), 538 N.W.2d 802, 803 (Wisc. Ct. App. 1995) (concluding cash deposits in banks are "intangible personal property"); Travelers Indem. Co. v. State, 680 P.2d 1255, 1257 (Ariz. Ct. App. 1984) (observing bank deposits are "intangible property"); see also Black's Law Dictionary 1253-54 (8th ed. 2004) (defining "intangible property" as "[p]roperty that lacks a physical existence," such as "stock options and business goodwill," and "tangible personal property" as "personal property that can be seen weighed, measured, felt, or touched, or is in any other way perceptible to the senses, such as furniture, cooking utensils, and books").

20

The Ivesters urge that the priority provisions of N.C. Gen. Stat. § 1-440.33(c) also apply to bank accounts. Unlike attachment liens in real and tangible personal property, however, section 1-440.33(c) does not specifically establish an effective date or priority for attachment liens in intangible personal property. Rather, this subsection provides that "[a] levy on *tangible* personal property . . . creates a lien on the property thus levied on from the time of such levy." N.C. Gen. Stat. §§ 1-440.33(c) (emphasis added). This omission of any reference to *intangible* property does not appear to have been an oversight. The North Carolina General Assembly distinguished between orders of attachment for tangible and intangible property elsewhere in the statutory scheme, suggesting that the General Assembly, well aware of the different types of property, sought to treat them differently. <u>E.g.</u>, <u>id.</u> §§ 1-440.15(5) (identifying the method of execution); 1-440.21(2) (addressing nature of garnishment). A distinction in the perfection of attachment liens for tangible and intangible personal property is also borne out in the cases. <u>Medoil Corp. v. Clark</u>, 751 F. Supp. 88, 89 (W.D.N.C. 1990) (interpreting N.C. Gen. Stat. § 1-440.19(a) to allow the attachment of a stock certificate but not an intangible ownership interest in the stock); <u>see</u> <u>Newberry</u>, 203 N.C. at 337-39, 166 S.E. at 82-83; <u>*In re* Phipps</u>, 202 N.C.

21

642, 645-46, 163 S.E. 801, 802 (1932).  Thus, the plain language
of section 1-440.33 prevents application of its priority rules
to attachment liens for intangible property.

The Ivesters have not provided any other authority,
statutory or otherwise, to support their contention that their
attachment liens in the bank accounts enjoy priority.  In the
absence of a contrary statutory provision, an attachment lien in
intangible personal property remains unperfected until entry of
a final judgment.  N.C. Gen. Stat. 1-440.46.  The only relevant
case law, though dated and based on a predecessor statutory
scheme, also indicates that "[a] lien can be acquired against
such property[] only by the issuance of an execution on the
judgment, and by proceedings to enforce the execution."
Newberry, 203 N.C. at 338, 166 S.E. at 83.  The lien is "an
inchoate lien, which must be perfected by judgment."  Id.;
accord In re Phipps, 202 N.C. at 645-46, 163 S.E. at 802.

Based on the above, the court concludes that the Ivesters'
attachment liens in the bank accounts remained unperfected as of
the petition date.  The bankruptcy court properly held that the
Ivesters' property interest in those assets on the petition date
was inferior to that of the Trustee, who became a judicial lien
creditor as a matter of law under section 544 of the Bankruptcy
Code.

22

Having resolved the status of the Ivesters' liens, the next question is whether the bankruptcy court erred by not granting relief from stay to allow the Ivesters to proceed to judgment in the state court action.

### B.    Exception to Automatic Stay under Section 362(b)(3)

The Ivesters argue first that they are entitled to mandatory relief from the automatic stay as a matter of law under section 362(b)(3) of the Bankruptcy Code. (Doc. 9 at 26-32; Doc. 11 at 10-14.)

A bankruptcy petition automatically stays most pre-petition actions against the debtor or property of the estate.[13]  11 U.S.C. § 362(a). The purpose of the automatic stay is "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor . . . with a reasonable respite from protracted litigation." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986).

---

[13]  For example, and pertinent here, section 362(a) stays (1) "any act to create, perfect, or enforce any lien against property of the estate"; (2) "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case"; and (3) "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1), (4)-(5).

23

Under section 362(b)(3), the automatic stay will not apply to "any act to perfect . . . an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)." 11 U.S.C. § 362(b)(3). Section 546(b), in turn, states that a trustee's rights and powers to avoid certain transfers of property of the debtor "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." Id. § 546(b)(1)(A). If a creditor satisfies these requirements, the property interest may be perfected without the need for judicial relief from the automatic stay. Vanderbilt Mortgage and Fin., Inc. v. Griggs (In re Griggs), 965 F.2d 54, 58 n.3 (6th Cir. 1992).

The bankruptcy court declined to apply this exception to the Ivesters' attachment liens, holding that this "limitation on the Trustee's avoidance powers . . . normally applies to the perfection of a mechanic's or materialman's lien or a purchase money security interest." In re Bradshaw, 2007 Bankr. LEXIS 618, at *21. The Trustee concurs with the bankruptcy court's interpretation and argues that this exception to a trustee's avoidance powers applies only when "the trustee has no standing to assert the interest or claim of the creditor." (Doc. 11 at

24

22.)  Because this is an issue of statutory interpretation, review is *de novo*. In re Griggs, 965 F.2d at 56.

As an initial matter, the Ivesters argue that mandatory stay relief for attachment liens is not statutorily precluded, pointing out that sections 362(b)(3) and 546(b)(1)(A) do not expressly limit their applicability to any particular type of property interest. (Doc. 12 at 11); Freytag v. Comm'r, 501 U.S. 868, 873 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry should be complete except in rare and unusual circumstances."). Section 362(b)(3) applies broadly to "any act to perfect . . . *an interest in property*," 11 U.S.C. § 362(b)(3) (emphasis added), and section 546(b)(1)(A) likewise refers generally to the "perfection of *an interest in property*." Id. § 546(b)(1)(A) (emphasis added).

The legislative history also never expressly limits the applicability of section 546(b)(1)(A). As the bankruptcy court noted, the legislative history indicates that "this exception was devised to provide for holders of a purchase-money security interest, which, due to the intervening bankruptcy filing, were prohibited from perfecting their liens." In re Bradshaw, 2007 Bankr. LEXIS 618, at *21. But this reference to purchase money security interests in the legislative history is given as an example of a generally applicable state law interest that is

25

covered by section 546(b)(1)(A).  S. Rep. No. 95-989, at 86 (1978), _as reprinted in_ 1978 U.S.C.C.A.N. 5787, 5872; H.R. Rep. No. 95-595, at 371 (1977), _as reprinted in_ 1978 U.S.C.C.A.N. 5963, 6327.  The legislative history does not purport to provide an exhaustive list of property interests covered by section 546(b)(1)(A) and instead evinces a congressional intent to permit a state to fashion its own laws governing their priority.

Nevertheless, mechanics' liens and security interests undeniably predominate the case law applying section 546(b)(1)(A).  _E.g._, _WWG Indus., Inc. v. United Textiles, Inc._ _(In re WWG Indus., Inc.)_, 772 F.2d 810, 812 (11th Cir. 1985); _In re United Am., Inc._, 327 B.R. 776, 785 (E.D. Va. 2005); _In re Saberman_, 3 B.R. 316, 318 (N.D. Ill. 1980)).  No party has identified any case that specifically limits section 546(b)(1)(A) to these interests.  To the contrary, the First Circuit held that while purchase money security interests are "one example of a state statute that fits under the wide umbrella of section 546(b)(1)(A), other types of statutes can find shelter there as well." _229 Main St. Ltd. P'ship v. Mass. Dep't Envtl. Prot. (In re 229 Main St. Ltd. P'ship)_, 262 F.3d 1, 11 (1st Cir. 2001) (applying section 546(b)(1)(A) to a state environmental superlien statute).  Indeed, section 546(b)(1)(A) has been applied to preserve an attachment lien.  _See_, _e.g._,

26

Weiss v. Azran (*In re* Thunderbolt Realty Trust), 190 B.R. 11,
15-16 (Bankr. D. Mass. 1995) (holding that section 546 applies
to a prepetition attachment under Massachusetts law).  But see
*In re* Savidge, 57 B.R. at 391 (holding that an "unperfected
lien, created by [the creditor's] . . . writ of domestic
attachment in order to compel the appearance of the defendant
and wholly dependent upon the subsequent recovery of a judgment
on the attachment process, is not the type of 'interest in
property' which can be perfected under Section 546(b) after the
debtor files for bankruptcy").

The parties have not cited, nor has the court found, any
Fourth Circuit decision on the issue.  Because nothing appears
to definitively preclude attachment liens from the ambit of
sections 362(b)(3) and 546(b)(1)(A), the court will analyze the
Ivesters' attachment liens to determine whether they could pass
muster thereunder.  As will be seen, however, that analysis will
reveal why attachment liens would rarely, if ever, qualify for
mandatory stay relief, principally confirming that such a
requirement could eviscerate the stay provisions of the Code and
wreak havoc on the bankruptcy proceedings.

The automatic stay exception under section 362(b)(3)
requires proof of the following three elements:  (1) an "act to
perfect"; (2) an "interest in property"; and (3) a statute

27

authorizing perfection in accordance with section 546(b)(1)(A).
11 U.S.C. § 362(b)(3); *In re 229 Main St. Ltd. P'ship*, 262 F.3d
at 4.  This three-part test must be applied separately to the
Ivesters' real and intangible property attachment liens because
different provisions of the North Carolina attachment lien
statute apply to each asset type.

### 1.    Real Property

Although the automatic stay applies to "any act to create,
perfect, or enforce" a lien against property of the debtor or
the estate, 11 U.S.C. § 362(a)(4)-(5), section 362(b)(3) creates
an exception only for "act[s] to perfect."[14]   *Id.* § 362(b)(3).
The Ivesters have already perfected their attachment lien in the
real property through the docketing and indexing of the levy.
An act to enforce that interest by seeking final judgment in
their state court action is not permitted under this exception.
Vienna Park Props. v. United Postal Sav. Ass'n (*In re* Vienna
Park Props.), 976 F.2d 106, 114 (2d Cir. 1992); Clark v. Valley
Fed. Sav. & Loan Ass'n (*In re* Reliance Equities, Inc.), 966 F.2d
1338, 1344 n.7 (10th Cir. 1992).  The bankruptcy court therefore
did not err in finding that the Ivesters fail to qualify for
mandatory stay relief as to the real property.

---

[14]   Section 362(b)(3) also creates an exception for acts to maintain
and continue perfection, which are not at issue in this appeal.  11
U.S.C. § 362(b)(3).

28

## 2.  Bank Accounts

As to the bank accounts, the court assumes, without deciding, that the Ivesters could satisfy the first element of the three-part test, because perfection of an attachment lien in intangible personal property occurs only by entry of a final judgment in the principal state court action, which has not occurred.[15]  N.C. Gen. Stat. 1-440.46; Newberry, 203 N.C. at 338, 166 S.E. at 83.

The court also assumes that the Ivesters could satisfy the second element; namely, that their unperfected attachment liens constitute an "interest in property."  As discussed supra, a creditor may acquire an attachment lien in intangible property. N.C. Gen. Stat. §§ 1-440.4; 1-440.15(5); 1-440.25.  Even though an attachment lien in bank accounts is not perfected until entry of a final judgment in the underlying action, at least one North Carolina court has held that such a creditor has an interest in the attached property.  Newberry, 203 N.C. at 338-39, 166 S.E.

---

[15]  The court assumes, without deciding, that seeking a final judgment could constitute an "act to perfect" as contemplated by this section. See In re Thunderbolt Realty Trust, 190 B.R. at 15-16 (holding that the levy of execution on a prepetition attachment is an "act of perfection" under section 546).  This assumption is not without its difficulties, as litigating a lawsuit to judgment is very unlike the more administrative or ministerial tasks to perfect a pre-existing obligation that ordinarily are recognized as falling under this section.  See In re Savidge, 57 B.R. at 391 (holding that an unperfected attachment lien, wholly dependent upon the subsequent recovery of a judgment, is not the type of "interest in property" which can be perfected under section 546(b)).

at 83 (holding under a predecessor statute that although "the right acquired by plaintiff [in intangible property] is frequently described as a lien, or an equitable lien, or *quasi* lien, or as an inchoate lien, which must be perfected by judgment," the service of a writ or summons in garnishment confers "a specific right . . . upon plaintiff to the indebtedness or property for the payment of this claim over and above more general creditors"). The Bankruptcy Code also defines a "lien" as a "charge against or *interest in property* to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added.) The court therefore assumes, without deciding, that at the time of the petition the Ivesters held a property interest in the bank accounts of Bradshaw, Fredia Bradshaw, AFC, the Lyndsey Foundation, and PublishTown.

It is the third element – demonstration of the existence of a statute authorizing perfection in accordance with section 546(b)(1)(A) – that dooms the Ivesters' claims. Section 546(b)(1)(A) prescribes another three-part test: (1) the trustee must be subject to a law of general applicability; (2) that law must permit the perfection of an interest in property; and (3) such perfection must be effective against previously acquired rights in the property. 11 U.S.C. § 546(b)(1)(A); *In*

30

*re 229 Main St. Ltd. P'ship*, 262 F.3d at 10 (applying section 546(b)(1)(A) to a statutory lien).

A law is "generally applicable" if it applies equally to bankruptcy and non-bankruptcy actions.[16]  *In re 229 Main St. Ltd. P'ship*, 262 F.3d at 10.  The North Carolina attachment lien statute never singles out individuals or entities that have sought the protection of the Bankruptcy Code.  Thus, it satisfies this test.  *In re Microfab, Inc.*, 105 B.R. 152, 156-57 (Bankr. D. Mass. 1989).

The court has already discussed how the North Carolina attachment lien statute authorizes the perfection of a lien in intangible personal property by entry of a final judgment in the principal action.  N.C. Gen. Stat. 1-440.46; see *Newberry*, 203 N.C. at 338; 166 S.E. at 83.  Thus, a generally applicable law

---

[16]    Congress defined the term "generally applicable law" in the legislative history of section 546(b):

> The phrase "generally applicable law" relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases. . . . The purpose of the subsection is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection. It is not designed to give the states an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

S. Rep. No. 95-989, at 86 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5872; accord H.R. Rep. No. 95-595, at 371 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6327.

31

permits the perfection of the Ivesters' interest in the bank accounts.

Finally, the generally applicable law must be effective against previously acquired rights in the property. It "need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. § 546(b)(1)(A)." *In re AR Accessories Group, Inc.*, 345 F.3d 454, 458 (7th Cir. 2003). "The key is not relation back, but, rather, whether the statute in question provides for an interest that, once perfected, trumps earlier-filed claims. *In re 229 Main St. Ltd. P'ship*, 262 F.3d at 11. The Ivesters cannot satisfy this requirement. The North Carolina statutory scheme simply lacks any provision granting holders of attachment liens for intangible personal property priority over previous lienors. See Newberry, 203 N.C. at 338; 166 S.E. at 83 (deciding under predecessor statute that "[a] lien can be acquired against such property[] only by the issuance of an execution on the judgment, and by proceedings to enforce the execution"). Thus, the bankruptcy court did not err in finding that the Ivesters' attachment liens in the bank accounts fail to qualify for the mandatory exception to the automatic stay under section 362(b)(3).

32

## C.    Discretionary Relief from the Automatic Stay

"Congress . . . has granted broad discretion to bankruptcy courts to lift the automatic stay to permit enforcement of rights against property of the estate." Claughton v. Mixson, 33 F.3d 4, 5 (4th Cir. 1994). Section 362(d)(1) provides that a "court shall grant relief from the stay provided under [section 362(a)] . . ., such as by terminating, annulling, modifying, or conditioning such stay . . . *for cause*. 11 U.S.C. § 362(d)(1) (emphasis added). "Cause" is not defined in the Bankruptcy Code. Rather, "courts must determine when discretionary relief is appropriate on a case-by-case basis." Claughton, 33 F.3d at 5.

In determining whether cause exists to terminate the automatic stay, a court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." Robbins v. Robbins (*In re* Robbins), 964 F.2d 342, 345 (4th Cir. 1992). The factors courts consider include:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek

33

enforcement of any judgment through the bankruptcy
court.

Id. While Congress intended the automatic stay to have broad
application, section 362 denotes that a stay should be lifted in
appropriate cases. Id. In assessing stay relief, the Ivesters
bore the burden of demonstrating the debtor's equity in
property; the Trustee had the burden as to all other issues. 11
U.S.C. § 362(g); *In re United Energy Coal, Inc.*, No. 06-453,
2008 WL 496142, at *5 (Bankr. N.D.W. Va. Feb. 21, 2008). A
decision on stay relief may be overturned on appeal only for an
abuse of discretion. *In re Robbins*, 964 F.2d at 345.

The bankruptcy court denied the motion for relief from the
automatic stay in part because of potential prejudice to the
bankruptcy estate.[17] *In re Bradshaw*, 2007 Bankr. LEXIS 618, at
*8. The court found that "[t]o allow the Ivesters to go forward

---

[17] The bankruptcy court cited Robbins but did not articulate any
analysis of the first and third factors of the three-part test,
believing the second factor to be dispositive. *In re Bradshaw*, 2007
Bankr. LEXIS 618, at *7-9. It is apparent that the first factor does
not weigh in favor of lifting the automatic stay. State court
expertise is important only in "cases in which state courts have a
special expertise and for which federal courts owe significant
deference," such as family law. *In re Robbins*, 962 F.2d at 345. In
this action, the state securities claim was resolved by summary
judgment, and there is no demonstration that the laws governing fraud
and breach of duty either are matters of unique state concern or
require bankruptcy expertise. Moreover, the bankruptcy court was
aware that the fraudulent conveyance claim would be prosecuted by the
Trustee in federal court, thus mooting consideration of a large part
of the Ivesters' state court action. As to the third factor, it would
appear that any state court judgment would have to be enforced in
federal court as to the real property.

34

would prejudice the bankruptcy estate, and other unsecured creditors would be denied a recovery."[18]    Id.    The court based this conclusion in part on the unsecured nature of the Ivesters' prejudgment attachments, holding that the Trustee's interest in the real property and bank accounts held priority over the Ivesters' prejudgment attachments in the same property.    Id. at *12.    The bankruptcy court implicitly recognized that if it permitted the Ivesters to proceed to judgment and secure judgment liens based on the prejudgment attachments, which comprised roughly eighty percent of all unsecured claims, the Ivesters could recover from the bankruptcy estate to the exclusion of unsecured creditors.    Id.

No party has identified, nor has the court found, Fourth Circuit precedent on the precise issue here.    The Ivesters point to decisions holding that relief from stay must or should be granted to attachment lienors to permit them to proceed to judgment.    These cases turn on individual state law and are distinguishable.    See, e.g., In re Thunderbolt Realty Trust, 190

---

[18]    The bankruptcy court also found that allowing the Trustee to prosecute the adversary proceeding could benefit the Ivesters "by saving them the cost of paying their own counsel."    In re Bradshaw, 2007 Bankr. LEXIS 618, at *8-9.    While true, this reason is less persuasive because the Ivesters were willing to pay their own counsel to proceed with the state court action if it afforded them the opportunity to secure a final judgment and, thereby, enforce their attachment liens in the real property and bank accounts.    Cf. In re Robbins, 964 F.2d at 346 (considering expense to both parties as factor in assessing judicial economy).

35

B.R. at 14-15 (granting retroactive stay relief where state court, unaware of stay order, entered post-petition judgment, which plaintiff executed on based on pre-petition attachment lien, because by the time the matter was brought to the bankruptcy court's attention the judgment had withstood appeal); First Fed. Bank of Calif. v. Robbins (*In re* Robbins), 310 B.R. 626, 629-30 (9th Cir. 2004) (finding that under California law where an attachment issues only upon a showing of probable validity of the underlying claim after a contested hearing, it was error for bankruptcy court to use the automatic stay solely to thwart attachment lienor's "right" to proceed to judgment to "perfect" lien, but then stating multiple bases a court may deny stay relief); Wind Power Sys., Inc. v. Cannon Fin. Group, Inc. (*In re* Wind Power Sys., Inc.), 841 F.2d 288, 293 (9th Cir. 1988) (holding that trustee could not invalidate an attachment lien under section 544 because California law required a "significantly stronger showing on the merits" to obtain an attachment lien through a contested state court proceeding); Kepler v. Travelers Indem. Co., No. 98-35139-7, 2000 WL 33950020, at *6 (Bankr. W.D. Wis. Mar. 21, 2000) (holding that trustee could not prime an attachment lienor who had obtained relief from stay and converted the lien to judgment under Wisconsin law).

36

On the other hand, at least one court has recognized that while attachment liens cannot be primed automatically by a trustee, the bankruptcy court need not grant relief from stay to permit trial in the underlying action.  See, e.g., In re Savidge, 57 B.R. at 391 (noting contingent nature of attachment lien and recognizing that denial of relief from stay may result in its dissolution).  This approach appears consistent with Fourth Circuit law seeking to preserve the trustee's authority to maintain the integrity of the bankruptcy proceeding and to avoid piecemeal litigation.  Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441-42 (4th Cir. 1999).  It is also consistent with cases in our circuit generally on the issue of granting stay relief to allow litigation to proceed.[19]  See, e.g., Am. Coll. of Dentists Found., Inc., v. Dorris Mktg. Group, Inc. (In re Dorris Mktg. Group, Inc.), No. 03-15025-SSM, 2005 Bankr. LEXIS 282, at *4-5 (Bankr. E.D. Va. Jan. 11, 2005) (giving reasons why "it is nevertheless the exceptional case in which the stay will be modified to permit litigation against the

---

[19]    Under the North Carolina statutory scheme for attachment liens, as long as the underlying principal action remains viable the attachment lien survives in bankruptcy and must be valued, whether through litigation or the proof of claim process.  Otherwise, if the underlying state court action lapses (e.g., through dismissal or adverse judgment), so too does the attachment lien dissolve.  The court need not decide on this record whether a court may refuse to grant stay relief permanently such that it results in the elimination of an attachment lien in which there is equity value, such facts not being squarely raised on this record.

37

debtor to go forward in another forum" and noting that stays "prevent[] efficient administration of bankruptcy cases from being held hostage to the crowded condition of another court's docket").

To the extent the bankruptcy court's denial of relief from the automatic stay was predicated on its belief that the Ivesters' interest in the bank accounts was unperfected absent final judgment, it was correct. Because the attachment liens were not perfected as of the filing of the petition, the Trustee became a judgment lien creditor as a matter of law under section 544 of the Bankruptcy Code. Thus, the bankruptcy court properly held that the Ivesters' property interest in the bank accounts was inferior to that of the Trustee and that other unsecured creditors would suffer prejudice if the Ivesters were permitted to secure a final judgment.

To the extent the bankruptcy court premised its denial of relief from stay as to the Ivesters' attachment lien in the real property on the same grounds, it was incorrect for the reasons previously explained. However, because the Ivesters' interest in the real property was inchoate and required a final judgment in the state court action in order to become secured through execution, the bankruptcy court's decision at the time is sustainable. An attachment lien is a unique creature of state

38

law, parasitic on and sustaining its life from the underlying state court action.    Unlike deeds of trust, financing statements, and other secured liens, an attachment lien under North Carolina law has no intrinsic value but depends on the outcome of the principal action, which may require extensive proceedings.    N.C. Gen. Stat. § 1-440.1.    Indeed, if the rule were otherwise, holders of attachment liens could effectively hijack the orderly disposition of bankruptcy proceedings by insisting on potentially lengthy resolution of state court proceedings necessary to convert their inchoate rights into enforceable liens in the bankruptcy proceeding.[20]

Here, the record reflects that even if the Ivesters could have converted their attachment lien on the real property to a judgment lien, prior secured liens of the mortgagor and possibly the Internal Revenue Service may have exhausted any equity in the asset.    Granting stay relief in the removed state court action (or alternatively in state court, if remanded) could

---

[20]    It is not hard to envision the chaos that could ensue where multiple lawsuits were pending against a debtor at the time of the petition, each in different stages of levying attachment orders, and each plaintiff claimed entitlement to seek stay relief in order to litigate, conduct trial, and rush to a judgment in their respective actions.

39

result in a futile exercise.  The bankruptcy court was therefore
within its discretion to deny relief from stay.[21]

Considerations of judicial economy and interference with
the bankruptcy also support the bankruptcy court's decision.
Several factors bear on this assessment.  It is relevant if the
state court action is "well advanced" and "ready for trial,"
including whether the parties have completed discovery, a trial
date has been set, or the court has issued preliminary rulings.
Gibbons v. Knefel (In re Knefel), No. 07-11534-SSM, 2007 Bankr.
LEXIS 2890, at *4 (Bankr. E.D. Va. Aug. 20, 2007); In re Hogan,
No. 04-12336C-7G, 2004 WL 3510112, at *2 (Bankr. M.D.N.C. Oct.
18, 2004); In re Long Bay Dunes Homeowners Ass'n, Inc., 246 B.R.
801, 806 (Bankr. D.S.C. 1999).  Relief from stay may be
necessary to allow the complete resolution of all claims in a
single proceeding, without unnecessary duplication of
litigation.  Dunnam v. Sportsstuff, Inc., No. 3:07CV322-HEH,
2008 U.S. Dist. LEXIS 4821, at *10 (E.D. Va. Jan. 23, 2008); In
re Hogan, 2004 WL 3510112, at *2; IRS v. Robinson (In re
Robinson), 169 B.R. 356, 358 (E.D. Va. 1994).  Further, whether
relief would foster the expeditious and economical resolution of

---

[21]   The parties have also alluded to the potential that the Ivesters'
state court action claims might be extinguished if not excepted from
discharge.  The Ivesters maintain that their claims are excepted from
discharge under 11 U.S.C. § 523(a)(19) and that a state court has
jurisdiction to make that decision.  Issues relating to discharge are
not yet ripe in the record before this court.

the proceeding, *In re* Robbins, 964 F.2d at 346; *In re* Hogan, 2004 WL 3510112, at *2, and whether litigating in multiple fora causes inconvenience and potential prejudice to the trustee and the bankruptcy estate are also considered. *In re* Hogan, 2004 WL 3510112, at *2; *In re* Robinson, 169 B.R. at 359. Finally, courts consider whether the claims could nevertheless be resolved centrally in the more efficient proof of claim process. *In re* Dorris Mktg. Group, Inc., 2005 Bankr. LEXIS 282, at *4-5.

The Ivesters argue that relief from the automatic stay will promote judicial economy because the state court action, which was litigated for nearly two years, is ready for trial. (Doc. 9 at 32-33.) They point to extensive discovery and motion practice in the state court, its grant of partial summary judgment, and the filing of the bankruptcy petition less than a fortnight before the trial date. (Id.) While all true, countervailing factors support the automatic stay. First, as noted earlier, the only attachment lien that survives the petition is that on the real property, and there is evidence that was before the bankruptcy court that, until the real property is sold and its value fixed, the state court action may be a pointless exercise from the Trustee's point of view because prior secured creditors will exhaust its equity. Second, though much has been done in the state court action, a trial is no mean

41

feat and could potentially require extensive time to resolve. Third, the Ivesters could not pursue all their claims to final judgment because, as noted _infra_, the Trustee enjoyed sole standing to prosecute the state court action with respect to the claims of fraudulent transfer, which relate to the bank accounts. The bankruptcy court was aware that this would result in bifurcated actions.[22] _In re_ Bradshaw, 2007 Bankr. LEXIS 618, at *8-9. Finally, the bankruptcy court noted that the size of the Ivesters' claims entitled them to virtually all unsecured assets, anyway, and it had not been shown that granting stay relief to pursue the real property liens would have changed that calculus. Id. at *8. Thus, the grant of relief from the automatic stay might not only fail to promote judicial economy, it could exacerbate matters.[23]

For the above reasons, the bankruptcy court did not abuse its discretion in concluding that the Ivesters failed to show

---

[22]    Indeed, during this appeal, the Bankruptcy Court granted summary judgment to the Trustee in the adversary proceeding. _In re_ Bradshaw, Order Granting Summary Judgment at 15-16. The Trustee resolved the adversary proceeding economically, because the Bradshaws did not participate in the proceeding. It is unclear on this record whether, because of the potential that a judgment could be excepted from discharge, the Bradshaws would feel compelled to contest the state court action.

[23]  This is not to diminish the very important reasons the Ivesters may ultimately want to obtain a final judgment in the state court action that is excepted from discharge; that is, so they can pursue collection for many years under North Carolina law in an effort to receive fair compensation for the wrongs Bradshaw allegedly committed.

sufficient cause to warrant relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.[24]

### D.   Standing

The bankruptcy court held that the Ivesters lacked standing to prosecute their fraudulent transfer claims in the state court action, noting that they had not perfected their interests in the attached real property and bank accounts.  *In re* Bradshaw, 2007 Bankr. LEXIS 618, at *14-15, 19-20.  It concluded instead that the Trustee had sole authority to avoid the fraudulent transfers from AFC to Bradshaw, Fredia Bradshaw, the Lyndsey Foundation, and PublishTown, as well as the Ivesters' attachment liens, pursuant to sections 544 and 548 of the Bankruptcy Code. Id. at *17-20.  The Ivesters argue that they have standing to prosecute their claims ahead of the Trustee.[25]  (Doc. 9 at 21-23.)

---

[24]  The Trustee also argues alternatively that, because he has obtained summary judgment in the adversary proceeding, the Ivesters are precluded from ever obtaining a final judgment on the fraudulent transfer claims in the state court action and, thereby, from enforcing their attachment liens.   Thus, he argues, no relief from stay is necessary.  (Doc. 11 at 8, 22-23.)  The Ivesters respond that the entry of summary judgment neither precludes the grant of a final judgment in the state court action nor renders moot their pursuit of a determination that the judgment is nondischargeable.  (Doc. 12 at 15-16.)  The court need not resolve whether and how the principles of res judicata may apply in this action, such decision being left to the bankruptcy court should it be necessary.

[25]  The Ivesters' standing argument appears to be mooted by the bankruptcy court's grant of summary judgment in the fraudulent transfer adversary proceeding, which the parties report occurred after

43

Section 548 of the Bankruptcy Code authorizes a trustee to avoid fraudulent transfers of a debtor's property. 11 U.S.C. § 548(a)(1)(A). Generally speaking, after the filing of a bankruptcy petition a creditor lacks standing under section 548 to bring a cause of action for the avoidance of fraudulent transfers. "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." Ruppert, 187 F.3d at 441; accord Poth v. Russey, 99 F. App'x 446, 457 (4th Cir. 2004) (per curiam); see Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir. 1988). Creditors "lack standing to bring 'causes of action [that] are . . . similar in object and purpose to claims that the trustee could bring in bankruptcy,' regardless of whether such claims are technically part of the estate of the bankrupt." Poth, 99 F. App'x at 457 (quoting Ruppert, 187 F.3d at 441). "When a creditor brings a state-law challenge to a transaction that a bankruptcy trustee could avoid as a fraudulent conveyance, the state-law cause of action is 'so similar in object and purpose' to the fraudulent conveyance claim that the creditor lacks standing to assert it." Id. The trustee therefore retains sole

---

briefing in this court. In the event of any uncertainty on that score and because of a dispute of the status of the assets obtained by the Trustee, the court addresses the argument on the merits herein.

44

standing to bring a cause of action, unless he abandons the claim.[26] Ruppert, 187 F.3d at 441.

The Ivesters point to In re Speir, 190 B.R. 657, 662 (Bankr. N.D. Ala. 1995), and argue that courts have recognized an exception to the trustee's avoidance powers when the creditor has an interest in the property superior to that of the trustee. (Doc. 9 at 21-23.) In re Speir involved a situation where the creditor obtained a pre-petition judgment against the debtor which was superior to any property interest of the trustee under state law. 190 B.R. at 661-62. The bankruptcy court determined that, because of the creditor's prior judgment, the trustee could realize no tangible benefit for the debtor's bankruptcy estate and on that basis held that the creditor had standing to pursue his fraudulent transfer claim. Id. at 661-64. Here, the Ivesters' attachments as to the bank accounts were voided under section 544, and while the Ivesters have an interest in their inchoate rights arising under the attachment lien on the real

---

[26] The Ivesters initially argue that the Trustee lacks standing to set aside the fraudulent transfers because those claims are not part of the bankruptcy estate. (Doc. 9 at 13.) This argument fails because the bankruptcy court concluded that AFC is an alter ego of Bradshaw and, thus, that the property falls within the bankruptcy estate. In re Bradshaw, Order Granting Summary Judgment at 15. The Ivesters also point out that their attachment liens are not subject to avoidance as preferential transfers under section 547 of the Bankruptcy Code. (Doc. 9 at 14.) This does not appear to be a contested issue, nor did the bankruptcy court ever raise it. It therefore need not be decided here.

45

property, it is inferior to the interests of the Trustee to the extent of his representation on behalf of at least the mortgagor (which may consume the asset) and possibly the Internal Revenue Service.

Under Fourth Circuit law, the Trustee has sole authority to bring the avoidance action attacking the fraudulent transfers, as the Ivesters' claims are similar in object and purpose. Ruppert, 187 F.3d at 441. Any property the Trustee recovers as a result of the avoided transfers remains subject to any valid liens and must be distributed to creditors in accordance with their order of priority. Moore v. Bay, 284 U.S. 4, 5 (1931); Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.), 178 B.R. 753, 764 (Bankr. C.D. Ill. 1995) (holding that a secured creditor "will have priority over a trustee's claim to the property arising out of the exercise of the avoiding powers"); Clausson Concrete Co. v. Walker (In re Lively), 74 B.R. 238, 239-40 (S.D. Ga. 1987); Mitchell v. Rock Hill Nat'l Bank (In re Mid-Atl. Piping Prods. of Charlotte, Inc.), 24 B.R. 314, 322 (Bankr. W.D.N.C. 1982) (holding that the trustee's recovery of inventory transferred to a third party in satisfaction of a debt is still subject to a secured party's security interest). Because the Ivesters' liens on the bank

46

accounts are eliminated under section 544, only their attachment
lien on the real property remains eligible.

## IV.   CONCLUSION

For the reasons stated herein, as of the date of the
petition the Ivesters' attachment lien on the real property was
perfected by levy and thus survived the Trustee's section 544
strong arm powers; the attachment liens on the bank accounts
were unperfected and are voided.   The Trustee was also
authorized to pursue the fraudulent transfers because the claims
in the state court action were so similar in object and purpose
that the Ivesters lacked standing.   The Trustee thus takes the
real property into the bankruptcy estate subject to the
Ivesters' attachment lien on it.   The bankruptcy court did not
abuse its discretion in denying the Ivesters relief from stay to
pursue trial and judgment in the state court action at the time
that decision was made.   Whether the Ivesters' attachment lien
on the real property has any equity value, and whether relief
from stay should subsequently be granted so that the Ivesters
could proceed to final judgment, depends on further proceedings
in the bankruptcy court.[27]

---

[27]   The issues that affect that analysis include, for example, whether
the real property has been sold such that a determination can be made
that equity exists for the Ivesters' attachment lien.   If no equity
exists for the Ivesters, there would be no point in pursuing judgment
to execute on the lien.   In addition, whether the Ivesters need to,

47

IT IS THEREFORE ORDERED that the bankruptcy court's Memorandum Opinion and Order of February 16, 2007, denying the Ivesters' motion for relief from the automatic stay is AFFIRMED.


                              /s/ Thomas D. Schroeder
                         United States District Judge

December 4, 2008

---

and if so did they, seek to except any remaining claims from discharge so as to keep the state court action underlying the attachment lien viable may be relevant. These and perhaps other issues remain for the parties to resolve in further proceedings, should the Ivesters determine that grounds exist for renewal of their motion for stay relief.